# UNITED STATES *v.* BIRDSALL.

# UNITED STATES *v.* BRENTS.

# UNITED STATES *v.* VAN WERT.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

Nos. 727, 728, 729.   Submitted and argued January 8, 9, 1914.—Restored to docket for reargument January 19, 1914.—Reargued February 25, 1914.—Decided April 6, 1914.

Where the District Court holds that the acts charged do not fall within the condemnation of the statute on which the indictment is based, it necessarily construes that statute and this court has jurisdiction under the Criminal Appeals Act of 1907.

Sections 39 and 117, Criminal Code, 35 Stat. 1109, defining and punishing the giving and accepting of bribes, cover every action within the range of official duty.

It is not necessary in order to constitute an act of an officer of the United States official action that it be prescribed by statute; it is sufficient if it is governed by a lawful requirement, whether written or established by custom, of the Department under whose authority the officer is acting.

The office of Commissioner of Indian Affairs was established to create an administrative agency with adequate powers to execute the policy of the Government towards the Indians, and one of the important duties of the Indian Office is the enforcement of liquor prohibition.

The action of the Commissioner of Indian Affairs in advising the

President of the United States whether or not clemency should be granted to one convicted of violating liquor laws in the Indian country is official action, and it is within the competency of the office to establish regulations requiring from all persons connected with the office true and disinterested reports to the Commissioner on which to base such advice.

The powers of the Indian Office to aid in suppressing the liquor traffic in Indian country extend to every matter to which such aid is appropriate; and the giving of recommendations to a Federal judge or attorney as to sentences of those convicted of violating the liquor laws is an official duty within the meaning of §§ 39 and 117, Criminal Code, and the giving of gifts to, and acceptance thereof by, officers in that department to influence their reports and recommendations constitute bribery under, and are punishable by, such sections.

206 Fed. Rep. 818, reversed.

THE facts, which involve the validity of indictments under §§ 39 and 117, Criminal Code, for giving and accepting bribes, are stated in the opinion.

*The Solicitor General, Mr. Assistant Attorney General Denison* and *Mr. Assistant Attorney General Wallace* for the United States, submitted:

The Commissioner may get facts and recommendations through subordinates. He may prescribe duties by regulation under §§ 161, 463, Rev. Stat.

There is no identity between a question to be decided by the judge and action by special officer.

That an executive officer advises a judicial officer or *vice versa* does not rob the primary decision or action of its official character.

A recommendation is action within the meaning of the statute.

The definition of bribery is as broad as the duties of officials.

There are two alternatives provided for by the act. If the words "may at any time" reach the future then this case is reached by the first alternative. "May be brought"

deals with the future. "By law" means "lawfully" or pursuant to law.

Section 39 read with § 117 leads to this conclusion.

The contention that every official duty must be specifically declared by act of Congress is absurd. Defendants' interpretation leaves a large field of official action unprotected. *Yee Gee* v. *United States*, 83 Fed. Rep. 146–147; *United States* v. *Gibson*, 47 Fed. Rep. 833; *United States* v. *Boyer*, 85 Fed. Rep. 425; *Vernon* v. *United States*, 146 Fed. Rep. 121; *United States* v. *George*, 228 U. S. 14, 22, cited by defendant are not in point.

In support of the Government's contentions, see *Benson* v. *Henkel*, 198 U. S. 1, 11; *Crawford* v. *United States*, 212 U. S. 189, 191; *Elkins* v. *Wolfe*, 44 Ill. App. 376, 380; *In re Miller's Estate*, 22 Atl. Rep. 1044; *In re Naegle*, 39 Fed. Rep. 833, 860; *Leonard* v. *Lennox*, 181 Fed. Rep. 760; *Lewis Publishing Co.* v. *Wyman*, 182 Fed. Rep. 13, 16; *Lindsley & Phelps Co.* v. *Mueller*, 176 U. S. 126, 136–137; *People* v. *Markham*, 30 Pac. Rep. 621; *Raymond* v. *Wathen*, 142 Indiana, 367; 41 N. E. Rep. 815, 816; *Sanford* v. *Sanford*, 28 Connecticut, 6, 20; *Schroeder* v. *Gemeiner*, 10 Nevada, 355, 361; *Sharp* v. *United States*, 138 Fed. Rep. 878; *State* v. *Butler*, 77 S. W. Rep. 572; *United States* v. *Bailey*, 9 Pet. 251, 253–255; *United States* v. *McDaniel*, 7 Pet. 14–15; *Wentworth* v. *Farmington*, 48 N. H. 207, 210.

*Mr. Charles W. Mullan,* with whom *Mr. H. B. Boies* was on the brief, for defendant in error in No. 727:

The demurrer only admits the allegations of the indictment which are well pleaded; it does not admit conclusions of law. *United States* v. *Ames*, 99 U. S. 35, 45; *Interstate Land Co.* v. *Maxwell Land Co.*, 139 U. S. 569, 578; *Commonwealth* v. *Trimmer*, 84 Pa. St. 65.

The power conferred upon the Secretary of the Interior to prescribe regulations for the government of his department, under § 161, Rev. Stat., is administrative only,

and is confined strictly to the transaction of business within his department. No power is conferred by any act of Congress which authorizes the Secretary of the Interior to establish any rule or regulations which can have any force outside of the Department of the Interior, or which does not relate directly to the administration of the business of the department. *United States* v. *George*, 228 U. S. 14, 20.

The power of the Secretary of the Interior to establish any rule or regulation, the violation of which may become the basis of a criminal charge, is not a power which can be implied, and, unless expressly given, does not exist.

*Haas* v. *Henkel*, 216 U. S. 462, does not control this case.

If the contention of the Government is upheld, there is no limit to the power of the head of a department of the Government to require his subordinates or the employés of his department, to interfere with the transaction of the business of the other departments of the Government.

Interference by the head of one department of the Government with the business of another department was never contemplated by Congress when § 161 was enacted, and the language of that section confines the power of the heads of the departments of the Government strictly to the business within such departments.

No rule, regulation, or usage can be promulgated or established by the Secretary of the Interior, under which he would have authority to advise an officer of another department of the Government, or the President of the United States, in relation to any matter pending in another department, or before the President.

This court has no jurisdiction under the act of March 2, 1907, to review the judgment of the court below.

The decision of the District Judge was not based upon the invalidity of any statute of the United States upon which the indictment is founded, nor did the decision involve any construction of the statute and its validity.

*United States* v. *Keitel,* 211 U. S. 371, 398–399; *United States* v. *Stevenson,* 215 U. S. 190, 195.

Any advice or suggestion, made by Van Wert, to any superior officer, or to any judge, as to the action or decision of such judge, in imposing sentence upon, or extending judicial clemency to, persons found guilty of violating the laws of the United States relating to the sale of intoxicating liquors to Indians, would simply be the suggestion or advice of a private individual and not that of an officer of the Government. *United States* v. *Gibson,* 47 Fed. Rep. 833; *In re Yee Gee,* 83 Fed. Rep. 185; *United States* v. *Boyero,* 85 Fed. Rep. 485; *United States* v. *George,* 228 U. S. 14; *Vernon* v. *United States,* 146 Fed. Rep. 121.

The cases cited by the Government do not control this case.

No appearance or briefs filed for defendants in error in Nos. 728 and 729.

MR. JUSTICE HUGHES delivered the opinion of the court.

Separate indictments were found against the several defendants. There were two indictments against the defendant Birdsall (which were consolidated) 'charging him with having given to Brents and Van Wert, respectively, a bribe in violation of § 39 of the Criminal Code. The indictments against Brents and Van Wert were for accepting the bribes in violation of § 117. Demurrer to each indictment, upon the ground that it charged no offense, was sustained by the District Court. 206 Fed. Rep. 818. The cases are brought here under the Criminal Appeals Act. March 2, 1907, c. 2564, 34 Stat. 1246.

In view of the nature of the question presented, it is not necessary to consider the indictments separately. According to the allegations, Birdsall was attorney for certain persons who, on indictment for unlawfully selling

liquor to Indians, had pleaded guilty and had been sentenced at the April term, 1910.  Application had then been made to the judge of the court for a reduction or suspension of the sentences and it was also stated that an effort would be made to obtain a commutation by executive action.  Brents and Van Wert were special officers, duly appointed by the Commissioner of Indian Affairs, under the authority of the Secretary of the Interior, for the suppression of the liquor traffic among the Indians.  It was averred that by the regulations and established requirements of the Department of the Interior they were charged with the duty of informing and advising the Commissioner of Indian Affairs, either directly or through other subordinates, concerning all matters connected with the conviction and punishment of persons violating the laws of the United States in reference to the liquor traffic affecting the Indians, and particularly "to inform the said Commissioner whether or not the effective suppression of the liquor traffic with and among Indians would be furthered or prejudiced by executive or judicial clemency in any particular case."

After referring to the conviction and sentence of the persons named, and to the application then made to the judge for a reduction or suspension of sentence, each indictment continued as follows:

"That then and there the judge of the said court announced that he would not change or reduce or suspend the said sentences or any part thereof, unless a recommendation to that effect was made to him by the said Commissioner of Indian Affairs; and the United States attorney in the aforesaid district announced that he would not recommend a commutation or other executive clemency unless a recommendation to that effect was made to him by the said Commissioner of Indian Affairs.

"That then and there, and during all the dates and times herein mentioned, it was and long had been the

settled usage and practice for the United States judges in determining upon sentences and upon the applications for changes, reductions, or suspensions thereof to consult the United States attorney, and either directly or through him the administrative officer charged with the enforcement of the laws in question, including laws for the suppression of the liquor traffic with and among the Indians, the said Commissioner of Indian Affairs; and likewise it had been and was the settled usage and practice of the President, in the exercise of his power of extending executive clemency, to consult the Attorney General; and likewise it had been and was the settled usage and practice of the Attorney General, for the purpose of advising the President on the said subject, to consult with the United States attorney or other officer by whom the prosecution had been conducted. . . .

"That then and there, and that at all the times herein mentioned, the Commissioner of Indian Affairs, in the performance of his official duty, as provided by the rules and regulations and established usages and practices and requirements of the said Department of the Interior, and as provided by law, was charged with the duties of assisting in the enforcement of the laws of the United States in reference to the liquor traffic affecting Indians, and particularly with the duty, when requested so to do, of advising and making recommendations to any judge before whom any prosecutions on the said subject may have been tried, and the United States attorney or other officer by whom the said prosecution had been conducted, concerning the effect upon the enforcement of the said law, of any proposed leniency or clemeney in connection with the punishment of the persons found guilty of offenses thereunder."

The indictments against Birdsall charged him with having given money to Brents and Van Wert with intent to influence their official action so that they would advise the Commissioner of Indian Affairs, contrary to the truth,

that upon facts officially known to them leniency should be granted to the persons who had been convicted and sentenced, as stated, and that in the interest of the enforcement of the laws the Commissioner should so recommend to the judge, the United States attorney, the Secretary of the Interior, the Attorney General, or the President. The indictments against Brents and Van Wert charged that they had received the money from Birdsall with the intent that their official action should be thus influenced.

As the District Court held that the acts charged did not fall within the condemnation of the statute, the court necessarily construed the statute and the cases are properly here. *United States* v. *Patten*, 226 U. S. 525, 535.

Section 117 of the Criminal Code (35 Stat. p. 1109), with respect to the acceptance of bribes, provides that "whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof" accepts money, etc., "with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby" shall be punished as stated. Section 39 (*id.* p. 1096), as to bribe giving, uses similar language in defining the official relation of the recipient and the character of the action intended to be influenced; adding the words—"with intent to influence him to commit . . . any fraud . . . on the United States, or to induce him to do or omit to do any act in violation of his lawful duty."

Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis (*United States* v. *George*, 228 U. S. 14, 22) for the charge in the present cases, if the action sought to be influenced was official action. To constitute

it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the department under whose authority the officer was acting. Rev. Stat., § 161; *Benson* v. *Henkel*, 198 U. S. 1, 12; *Haas* v. *Henkel*, 216 U. S. 462, 480. Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the department and fixed the duties of those engaged in its activities. *United States* v. *Macdaniel*, 7 Pet. 1, 14. In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery. *Haas* v. *Henkel, supra.*

We must assume, in view of the decision below, that the indictment sufficiently charged that the action of Brents and Van Wert, which it was sought to influence, was action in the course of duty so far as the regulations and usages of the department could establish that duty.

The question is whether the department had authority to establish it. The District Court held that it had no such power and hence that the indictments charged no offense. The ruling was that there was "no act of Congress conferring upon the Interior Department, or the Bureau of Indian Affairs, any duty whatever in regard to recommending to the executive or judicial departments of the Government whether or not executive or judicial clemency shall be extended to, or withheld from, any person who may be charged with, or convicted of, selling intoxicating liquors to Indians, or of any other offense against the United States." 206 Fed. Rep. 818, 821.

The Commissioner of Indian Affairs, "under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe," is

charged with "the management of all Indian affairs, and of all matters arising out of Indian relations" (Rev. Stat., § 463). The object of the establishment of the office was to create an administrative agency with broad powers adequate to the execution of the policy of the Government, as determined by the acts of Congress, with respect to the Indians under its guardianship. From an early day, Congress has prohibited the liquor traffic among the Indians, and it has been one of the important duties of the Indian Office to aid in the enforcement of this legislation. See act of June 30, 1834, c. 161, § 20, 4 Stat. 729, 732; Rev. Stat., §§ 2139, 2140, 2141; act of July 23, 1892, c. 234, 27 Stat. 260; act of January 30, 1897, c. 109, 29 Stat. 506. It has furnished such aid by the detection of violations, by the collection of evidence, and by appropriate steps to secure the conviction and punishment of offenders. The regulations of the office, adopted under statutory authority (Rev. Stat., §§ 465, 2058), have been explicit as to the duties of Indian agents in this respect.[1] In recent years, Congress has

---

[1] These regulations are as follows:

"574. Having therefore the power to break up to a great extent this demoralizing traffic," (the liquor traffic) "agents are expected to use the utmost vigilance in enforcing the penalties of the law against all persons who engage in it with the Indians under their charge, whether this is done on or off the reservation.

"575. When persons are detected in a violation of the law their cases should be placed in the hands of the district attorney for the district wherein the crime was committed, in order that they may be promptly arrested, tried, and punished; and agents will coöperate with that officer in his efforts to convict the guilty parties, furnishing him with the requisite evidence and all the facts that they may be able to obtain for the purpose indicated. Indians are competent witnesses in these cases.

"576. It is also the duty of agents to strictly carry out the provisions of sections 2140 and 2141 of the Revised Statutes of the United States respecting the searching for concealed liquors within their agencies and respecting the destruction of distilleries set up or continued in Indian country." *Regulations of the Indian Office* (1904).

made special appropriations "to enable the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, to take action to suppress the traffic of intoxicating liquors among Indians," (34 Stat. 328, 1017; 35 Stat. 72, 782; 36 Stat. 271, 1059; 37 Stat. 519) and an organization of special officers and deputies, serving in various states, has been created in the department. Through these efforts numerous convictions have been obtained. The results have been reported to Congress annually by the Commissioner [1] and the appropriations for the continuance of the service have been increased.[2]

---

[1] H. Doc. Vol. 27, 60th Cong. 1st Sess. pp. 26–31; H. Doc. Vol. 43, 60th Cong. 2d Sess. pp. 34–40; H. Doc. Vol. 44, 61st Cong. 2d Sess. pp. 12–15; H. Doc. Vol. 32, 61st Cong. 3d Sess. pp. 12–13; H. Doc. Vol. 41, 62d Cong. 2d Sess. pp. 32–33.

[2] The nature and extent of this authorized service of the department are shown by the following extract from the Commissioner's report for the fiscal year ending June 30, 1912: "Until 1906 . . . enforcement of these statutes and subsequent enactments" (as to the liquor traffic) "was left to Indian agents and superintendents and their Indian police, assisted so far as might be by local peace officers and by representatives of the Department of Justice. In 1906 criminal dockets in Indian Territory became so crowded and the possibility of early trial so remote that disregard of the statutes forbidding introduction of intoxicants assumed large importance. To meet the emergency Congress, in the act of June 21, 1906, appropriated $25,000 to be used to suppress the traffic in intoxicating liquors among Indians, and in August, 1906, a special officer was commissioned and sent to Oklahoma, that he and his subordinates might, through detective operations, supplement the efforts of superintendents in charge of reservations. In the fiscal year 1909, when the appropriation had grown to $40,000, this service began to operate throughout all States where Indians needed protection. In 1911 the service had grown until it had an appropriation of $70,000 and an organization including 1 chief special officer, 1 assistant chief, 2 constables, 12 special officers, and 143 local deputies stationed in 21 States. The increasing success of the service appears in the fact that in 1909, 561 cases which the service secured came to issue in court, resulting in 548 convictions, whereas in 1911, 1,202 cases came to issue, 1,168 defendants were convicted, and

This being the character of the Department's work, it cannot be doubted that when persons who are convicted apply for executive clemency the President is entitled to avail himself of the recommendations of the Secretary of the Interior and of the Commissioner. The information obtained by the Indian Office and its advice are always at his command. The President is entitled to know whether in the judgment of the Secretary, or the Commissioner, the granting of clemency will tend to promote or hinder the efforts of the Department. The action of these officers in thus advising the President plainly would be official action; but in so acting they would necessarily rely largely upon the reports and advice of subordinates in the department who were more directly acquainted with the existing conditions, the records of offenders and the facts and circumstances of particular cases. For this reason, if for no other, it was within the competency of the office to establish regulations, and practices having the force of regulations, that all persons employed in its work should render to the Commissioner whenever requested true reports and give disinterested and honest advice upon the facts known to them with respect to the advisability of showing leniency to convicted violators of the law.

Nor is there any ground for the conclusion that the President is limited to obtaining direct reports to himself in such matters. By virtue of his relation to the Department he may require the reports to be made to the Attorney General, who by the direction of the President may be intrusted with the duty of securing the information and recommendations which the President should have in order properly to pass upon applications for clemency; and for these purposes the Department could require

---

but 34 defendants were acquitted by juries. In 1911 fines imposed amounted to $80,463, or more than the appropriation for the service."
H. Doc. No. 933, 62d Cong. 3d Sess. pp. 11, 12.

the necessary reports from those engaged in its service.

Further, there can be no question that the authority of the Department in its undertaking to suppress the forbidden traffic extended to every matter in which its aid was appropriate. That was the clear import of the legislation broadly defining its powers and of the action of Congress in supporting its work. Whenever it could afford assistance in the course of proceedings to secure the punishment of offenders it was fully empowered to give it. If a judge in fixing the sentence to be imposed upon those found guilty, or in determining whether the sentence as imposed should be suspended or reduced, desired to be advised of the recommendation of the Commissioner of Indian Affairs, in view of his knowledge of the conditions attending the enforcement of the law, the Commissioner was not lacking in authority to comply with the request. It is not enough to say that there is no mandatory requirement imposing the obligation to give the recommendation. In executing the powers of the Indian Office there is necessarily a wide range for administrative discretion and in determining the scope of official action regard must be had to the authority conferred; and this, as we have seen, embraces every action which may properly constitute an aid in the enforcement of the law.

The Commissioner was entitled to give his recommendations to the judge or to the United States attorney upon request and he had complete power under the direction of the Secretary of the Interior to establish rules and usages in the Department by which he could secure correct information and uncorrupted advice from every one of his subordinates. None of these officers could properly say that in reporting with respect to the effect of leniency in particular cases he was acting outside the sphere of official conduct, and the giving and acceptance of bribes to influence their reports and recommendations

was within the statutes under which these indictments were laid.

The judgment of the District Court, in each case, is reversed, and the cases are remanded for further proceedings in conformity with this opinion.

*It is so ordered.*