Graham, Judge,
delivered the opinion of the court:
This case was argued and submitted on demurrer. It is a suit by the plaintiff as executrix of the estate of one Wiggins to recover money represented by certain Treasury Savings Certificates, payable on their face to certain beneficiaries, possession of which is held by the plaintiff as executrix, and which the Secretary of the Treasury on demand by her refused to pay, at the same time informing her “ that he would refuse to pay the proceeds of said certificates to any one except the parties named on said Treasury savings certificates, or their duly authorized assignees, or the administrators or executors.” A copy of one of said certificates appears in footnote.[1]
*636 The plaintiff alleges that the certificates “ were duly issued by the Treasury Department, pursuant to the authority of section 6 of the act of Congress approved September 24,1917, as amended, which is also known as title 31, section 757, United States Code, and reads as follows:
“ § 757. Second and Third Liberty Loans; Additional Loans; War-Savings Certificates. — In addition to the bonds authorized by section 752 of this title and the certificates of indebtedness authorized by section 754 of this title, the Secretary of the Treasury is authorized to borrow from time to time, on the credit of the United States for the purposes of sections 752 to 754, 757, 758, 760, 764 to 766, 769, 771, 773, and 774 of this title and to meet public expenditures authorized by law, such sum or sums as in his judgment may be necessary, and to issue therefor, at such price or prices and upon such terms and conditions as he may determine, war-savings certificates of the United States on which interest to maturity may be discounted in advance at such rate or rates and computed in such manner as he may prescribe. Such war-savings certificate shall be in such form or forms and *637 subject to such terms and conditions, and may have such provisions for payment thereof before maturity, as the Secretary of the Treasury may prescribe. Each war-savings certificate so issued shall be payable at such time, not exceeding five years from the date of its issue, and may be redeemable before maturity, upon such terms and conditions as the Secretary of the Treasury may prescribe. The sum of such war-savings certificates outstanding shall not at any one time exceed in the aggregate $4,000,000,000. It shall not be lawful for any one person at any one time to hold war-savings certificates of any one series to an aggregate amount exceeding $5,000. The Secretary of the Treasury may under such regulations and upon such terms and conditions as he may prescribe, issue, or cause to be issued, stamps to evidence payments for or on account of such certificates (Sept. 24, 1911, c. 56, § 6, 40 Stat. 291; Sept. 24, 1918, c. 176, § 2, 40 Stat. 966; Nov. 23,1921, c. 136, § T402, 42 Stat. 321).”
The petition further alleges that “ * * * the above-named defendant [i. e., the United States] did make and pro *638 mulgate on August 1, 1922, a rule of that department in regard to the registration and payment of said Treasury certificates as follows: * * Here the petition quotes Regulation XI in regard to the issuing of the certificates.
The petitioner then avers in the fourteenth paragraph of her petition that—
“ * * * said rules and regulations, in so far as they purport to apply to these Treasury savings certificates under the facts therein stated, are illegal and void and of no effect and unconstitutional and beyond the power of the Secretary of the Treasury Department to make or promulgate in this, that said Treasury savings certificates having been retained by said James Vinson Wiggins during his entire lifetime and never having been delivered to said persons whose names are contained in such certificates, either directly or constructively, that said certificates and the proceeds thereof are the property of the estate of James Vinson Wiggins and that the Treasury Department would not have the power or authority to make rules and regulations which would have the effect of passing the title to property in the State of Texas, and that the question as to the title and ownership of said certificates and the proceeds thereof, as herein stated, is controlled by the laws of the State of Texas and not by the rules and regulations of the Treasury Department.”
A list of the beneficiaries under these certificates is contained in paragraph 4 of the petition and the form of the certificate is contained in paragraph 5.
At the outset it is well to note that this is a suit on a contract between the plaintiff’s testator and the United States. This contract was entered into by the Secretary of the Treasury as the representative of the defendant under authority of the act of Congress and in conformity to the regulations made and promulgated by him before the execution of the contract, under authority given him by said statute, and the statute was passed in the exercise of the constitutional powers of Congress to borrow money. The contract having been entered into in conformity to the act and under the authorized regulations previously made and promulgated, both the act and the regulations must be read into the contract, became a part thereof at the time the contract was executed, and limit and fix the rights of the plaintiff’s testator as the purchaser of the certificates.
*639 Under these certificates as issued to the plaintiff’s testator he was allowed to name a third person as beneficiary, and such persons were named in each certificate, to whom the money represented by the certificate should be paid, under certain conditions.
As shown by the petition the Secretary refused to pay the certificates to the plaintiff because under the language of the certificates and their terms, and the regulations and contract, the money was payable to the beneficiaries named.
The plaintiff contends, as stated in the petition and elaborated in the brief, that the act of Congress is unconstitutional and the regulations of the Secretary of the Treasury passed in conformity thereto are void, for the reason that it is in effect an attempt to regulate and control the devolution of property as fixed by the statutes of the State of Texas. This is not a case where Congress has attempted after the fact to do something, as the act and the regulations were in effect prior to the execution of the contract. They were not passed after the fact. And the case is simply one of contract, a part of which contract is the act of Congress previously passed and the regulations of the Secretary of the Treasury promulgated in conformity thereto.
It is not contended here, and it can not be successfully contended, that the regulations of the Secretary of the Treasury are inconsistent with the act or in violation of its purposes. If this be true, then they became law within the limits of their provisions, as much the law as the act itself. United States v. Birdsall, 233 U. S. 223; United States v. Smull, 236 U. S. 405, and Maryland Casualty Co. v. United States, 251 U. S. 342, 349. In the latter the court said:
“ It is settled by many recent decisions of this court that a regulation by a department of Government, addressed to and reasonably adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the forcfe and effect of law if it be not in conflict with express statutory provision.”
This is but to express the law as it has existed since the opinion of Chief Justice Marshall in United States v. Maurice, 2 Brock. 96, 105, to the present time.
*640 This contract was formally, regularly, and legally entered into by the plaintiff’s testator and the Secretary, representing the United States. There is and can be no question about its terms and conditions. The plaintiff admits them in her petition, and sets them forth. The Secretary of the Treasury, as will be seen, has been proceeding under the statute, and had comprehensive authority to prescribe the terms and conditions of the payment of these certificates. The act says:
“ Each war savings certificate so issued shall be payable * * * upon such terms and conditions as the Secretary of the Treasury may prescribe.”
The Secretary prescribed the conditions that are to be found in the contract (paragraph 5 of the petition), and without going into details, they provide that the purchaser could have the certificate made payable either to himself or a beneficiary. He was not required. or compelled to make it payable to a beneficiary. If he did so, as in this case, it was provided that the name of the beneficiary would be registered in the Treasury, and that the fund represented by the certificate, the certificate being a mere evidence of debt, should be payable to him upon the death of the purchaser leaving the beneficiary surviving, unless' the purchaser during his lifetime recalled the designation or collected the fund represented by the certificate. The testator did not cancel the designation of the beneficiaries and did not collect the fund during his lifetime. He died leaving the beneficiaries surviving him. The Secretary of the Treasury in effect said to plaintiff that under the contract “ this money is payable to the beneficiaries and not to you and I refuse to pay it to you.” We are of opinion that in so doing he was acting in conformity to the provisions of the contract.
In the light of the foregoing conclusions plaintiff’s petition should be dismissed and it is so ordered.
Williams, Judge, and LittletoN, Judge, did not hear and. took no part in the decision of this case.
GreeN, Judge, and Booth, Chief Justice, concur.

 (Front of certificate)
THE united STATES OF AMERICA TREASÜRY SAVINGS CERTIFICATE
Issue of War-Savings Certificates
Act of September 24, 1917, as amended and supplemented
ONE HUNDRED DODLARS
THIS CERTIFIES THAT, SUBJECT TO THE TERMS AND CONDITIONS HEREINAFTER SET FORTH
(100)
A C — 5945252
James Vinson Wiggins, payable in case of death to Robb R. Ranldn 301 E. Dewey Place
Name of owner in full No. Street Series San Antonio, Texas, five years from April 2, 1923
City or Town State Month Day Year
The date of issue hereof will be entitled to receive the sum of One Hundred Dollars, or, at his option, npon presentation prior to maturity, the lesser amount indicated in the table appearing on the back hereof for the respective months following issue. This certificate is one of an issue of Treasury Savings Certificates, dated September 30, 1922, authorized by the act of Congress, approved September 24, 1917, as amended and supplemented, and issued pursuant to Treasury Department Circular No. 301, dated September 30, 1922, to which reference is hereby made for a statement of the further rights of holders as fully and with the same effect as if herein set forth. The Treasury Savings Certificates issued within any one calendar year constitute a separate series, under the serial designation of the year of issue. It is not lawful for any one person at any one time to hold Treasury Savings Certificates of any one series to an aggregate amount exceeding five thousand dollars, maturity value.
Payment of this certificate will be made upon presentation and surrender hereof, by mail or otherwise, at the office of the Secretary of the Treasury, *636 division of loans and currency, Washington, D. C., provided the form of demand for payment, appearing on the back hereof, shall be properly signed by the registered owner, in the presence of, and duly certified by, a united States Postmaster, an executive officer of an incorporated bank or trust company, or any other person duly designated by the Secretary of the Treasury for the purpose, in case of the death or disability of the registered owner, a special form of demand for payment prescribed by the Secretary of Treasury must be executed.
This certificate is not valid unless the owner’s name and address and the date of issue are duly inscribed hereon by an authorized agent at the time of issue thereof. This certificate is not transferable, and is payable only to the registered owner except in case of death or disability of such owner, and in such case is payable as provided in regulations prescribed by the Secretary of the Treasury.
Provision has been made for the registration of this certificate and the owner’s name and. address on the books of the Treasury Department, Washington. Washington, September 30, 1922.
Not transferable.
A. W. Mellon, Secretary of Treasury.
(Back of Certificate)
Table Showing How the Within $100 Treasury Savings Certificate Increases in Value During Succeessive Months Following Issue
$100 Certificate
1st 2nd 3rd 4th ' 5th
year year year year year
1st day of 1st month_$82.00 $84.40 $86.80 $89.20 $91.60
(Table of Cash Value According to Date)
At maturity, 5 years from date of issue-
Example: The purchase price of this $100 Treasury Savings Certificate is $82.00. If purchased on December 4, 1922, its value on May 12, 1923 (first *637 year sixth month), would be $83.00; its value on September 10, 1924, (second year tenth month), would be $86.20; and its value on December 4, 1927, maturity date, would be $100.
(Seal of Post Office Stamp Issuing office)
Form of Demand for Payment
The undersigned is the owner of the within certificate and hereby makes demand for the payment thereof. The undersigned does not hold Treasury Savings Certificates of any one series to an aggregate amount exceeding $5,000, maturity value.
(Signature of Owner)
No. and Street-
Town or city-
State_
Date
Personally appeared before me, the owner above named, known or proved to me to be the owner of this certificate, and signed the above demand for payment. Acknowledging the same to be his free act and deed. Witness my hand and official designation.
(Signature of Attesting Officer)
(Official Designation)
Seal or Post Office Stamp
Dated at___19-
This demand must be properly signed by the owner in the presence of, and duly certified by, a united States Postmaster, an executive officer of an incorporated bank or trust company, or other person duly designated by the Secretary of the Treasury for the purpose.