**TYSON v. UNITED STATES.**
No. 6170.

Circuit Court of Appeals, Fifth Circuit.
Dec. 8, 1931.

Rehearing Denied Jan. 9, 1932.

Marvin B. Simpson and Leo Brewster, both of Fort Worth, Tex., for appellant.

Norman A. Dodge, U. S. Atty., and Alex M. Mood, Asst. U. S. Atty., both of Fort Worth, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On two indictments growing out of the same transaction and consolidated for trial charging them with accepting a bribe, and with conspiring to obstruct justice and to defraud the United States by preventing the just administration of its criminal laws, John Tyson and William Logsdon, former federal prohibition agents, were convicted. Tyson alone appeals. One of the indictments charged him and his codefendant with accepting $500 as a bribe, the other with having conspired with Logsdon, in return for the payment of said sum, to prevent the enforcement and service of a jail sentence theretofore imposed upon one Hill by the United States District Court for the Northern District of Texas for violation of the National Prohibition Act. Appellant seeks a reversal of the judgment on the grounds that the court erred in not directing an acquittal for want of evidence, and in not charging the jury as requested in appellant's special charges.

That Hill paid $500 as a bribe, and for the purpose of corruptly influencing the administration of criminal justice in the United States court as charged, and that as a result of the payment a pretended release from the sentence, in reliance on which he failed to report for serving it, was sent him, does not admit of question. We do not understand Tyson to contend otherwise. His position is that the evidence does not connect him with the matter in any corrupt way, that Hill did give him the check with instructions to hold it until Hill had gotten release from the sentence and then pay it over to Logsdon, and that he did pay it over; but that he understood that he was a mere stakeholder in a legitimate transaction for the payment of fees to an attorney to be procured by Logsdon, through whose efforts the judgment and sentence was to be set aside.

We do not agree with appellant that the evidence does not support the verdict of guilty against him. On the contrary, we think the evidence does not fairly admit of any other conclusion. Here is a case of two prohibition agents, one of them, appellant, raised in the community with, and a friend and acquaintance of, Hill, the other Logsdon, supposed to have influence with the assistant United States attorney who had prosecuted Hill, joining in an arrangement by which Logsdon was to procure a lawyer to get the sentence set aside. It is true that Hill did testify that his arrangement for securing his release was with Logsdon, that he did not tell Tyson there was anything crooked about the matter, and that he had Tyson to hold the money because he knew him, and felt he could trust him not to turn it over until the release had been obtained. Whether this testimony was true, however, was for the jury, especially in view of Hill's own estimate of the transaction in which he and Logsdon were engaged, that he did not think there was anything crooked in his paying the prohibition agent who had made the case against him, to procure the services of the assistant district attorney who had prosecuted him, to set his sentence aside. On that point Hill said: "From all the maneuvering and everything I thought that Mr. McCutcheon, the Assistant United States District Attorney, was representing me in that case. As to the conversation in Fort Worth, there was not much conversation in it. Logsdon just said that the District Attorney was a mighty good friend of his and usually what he recommended, the Court would do. I asked Mr. Logsdon what it was going to cost me to get it handled, and he said $500. I told him I did not have that much money, and I was not able to pay that much, that I would like to get it done as cheaply as possible, and he said that was as cheap as he could get it done, that his attorney would not do it any cheaper. I explained to Mr. Tyson that I was giving Mr. Logsdon this check, and this check was to be given to get this case disposed of of mine, and was not to be cashed until after the case was disposed of and I had relief from the case, and instructed Mr. Tyson not to turn it over to Mr. Logsdon or the attorney either. Mr. Logsdon was present at this conversation." He also testified that he delivered the check at the depot to Mr. Tyson; that McCutcheon, the man who had prosecuted him, was also at the depot; that he got off the train when the train came in and walked into the depot in the lobby. Logsdon met him, and had a talk with him, and McCutcheon and Tyson

then left on the Fort Worth & Denver going north to Denver.

To make matters worse for Tyson, after Tyson had testified that he thought he was merely a stakeholder for Logsdon and the attorney he was to get, and that when advised by Logsdon that the matter had been disposed of he wired Hill that the release had been effected and asked for authority to pay over the money, and did pay it over to Logsdon, Logsdon denied any knowledge of the transaction, denied the receipt or any knowledge whatever of the check and its proceeds, and any knowledge that money was in any way involved. He testified that he did agree with Hill to recommend to McCutcheon that the sentence be remitted, but that this was not for money; it was for information from Hill on which he could make cases against some big bootleggers. McCutcheon testified that Logsdon had approached him on this line, and that he had recommended to Judge Wilson that the arrangement be made so that they could get some big offenders, and Judge Wilson had consented to it. He testified positively that he knew nothing of any money transaction until the indictment came up, and that then Logsdon had stated to him that neither he nor Tyson nor McCutcheon got any of the money. Logsdon further testified that the first he ever heard about the check transaction between Hill and Tyson was about three weeks before the trial, when Tyson called him and said, " 'They are going to indict us for taking a check.' I said, 'What check?' and he said, 'A check on Mr. Hill.' I said, 'I don't know anything about a check on Mr. Hill,' and he said, 'Yes, he claims that he gave us one for $500.' I said, 'I don't know anything about it.' Mr. Tyson then asked me not to appear and make bond; he asked me to leave town, and said he would give me $50 and send me more later on." Tyson contradicted Logsdon on all of these points, and reiterated his professions of innocence in connection with the matter. He did, however, admit that, about the time the check was cashed, Logsdon called him over the telephone, said he had seen the lawyer, and that the lawyer had gotten Hill some help, and that he wanted his money, and that he did send the telegram to Mr. Hill advising him of his release; that he drew the money from the bank and gave it all to Mr. Logsdon in Wichita Falls to give to the lawyer; that he did not receive one penny of it, and did not have any idea that there was anything shady about the transaction.

■ This state of the evidence, with the check made out to Tyson and cashed by Tyson upon a telegram sent by Tyson to Hill advising him of his release, and asking permission to cash the check, the fictitious release coming to Hill the next day after the receipt of the telegram from Tyson, the direct conflict between Hill and Logsdon, and Tyson and Logsdon, the unusual, the peculiar, the reprehensible character on its face of the transaction, made an overwhelmingly damaging case against both defendants, and furnished more than ample evidence to sustain the jury's finding that these men, in the service of the government, charged with the duty of arresting and helping in the prosecution of offenders, and of advising with the district attorney and his assistants in the general conduct of prohibition investigation and litigation, were guilty of accepting a bribe in furtherance of, and of a conspiracy to obstruct justice. U. S. v. Birdsall, 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930; Haas v. Henkel, 216 U. S. 462, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112.

■ Nor was there any error in the action of the court in refusing the requested charges. In the main charge, the court gave the jury the same instructions in substance, but in a way far more favorable to the defendant. The special charges asked in effect requested that the jury be advised that, though they should find bribery and conspiracy as to Hill and Logsdon, and that Tyson had received the check to be paid to Logsdon, if they should find that he was seeking in good faith and by lawful means to aid Hill, they could not find him guilty, unless he had knowledge of the unlawful intent. In the main charge, the court advised the jury that the essential element of the offense of bribery was that "the defendants Logsdon and Tyson, as officers of the United States, received a bribe to influence their official action in the punishment or conviction and the service of the sentence, of the defendant"; that the essential element in the second and third counts, the conspiracy to obstruct justice, are "that they must have known and have done what they did knowingly; that is that they knew that Hill had been convicted, that the Judge had imposed sentence on him and that they were to receive money from Hill for the purpose of impeding and obstructing the service of that sentence, by such actions, statements or movements as to them might appear effective in that direction."

By this charge the jury were not only instructed as Tyson had asked in his special charges, that he must have known of the unlawful intent, but that he must have been a party to it, and must have received, or expected to receive, a part of the money paid. The defendant's charges did not require that the jury find that Tyson actually received a bribe, or actually received, or expected to receive, money from Hill. The court's charge required for his conviction that the jury find, not only that he knew of the unlawful intent of Hill and Logsdon, but that he was a guilty party to it, and that he did receive, or was to receive, part of the money paid.

Further, at the conclusion of the main charge, upon the statement of defendant's counsel, "I think your Honor should instruct the jury that whatever connection defendant Tyson had with this matter they would have to find and believe from the evidence, beyond a reasonable doubt, that he knew of the unlawful intent either as to the bribery or as to the conspiracy," the court charged the jury, "I charge you that not only as to Mr. Tyson, but as to the other defendant. I think it would be quite improper to convict anyone unless they had an evil intent."

We find no error in the trial of this case. The judgment is affirmed.