## GILBERT v. UNITED STATES.

### No. 2913.

Circuit Court of Appeals, Tenth Circuit.

Aug. 28, 1944.

Harry Seaton, of Tulsa, Okl. (John M. Goldesberry, of Tulsa, Okl., on the brief), for appellant.

Wm. Knight Powers, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for appellant.

Wm. Knight Powers, Asst. U. S. Atty., of Tulsa, Okl., (Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Kelly Gilbert, was found guilty of violating 25 U.S.C.A. § 244, which makes it an offense to possess intoxicating liquors in Indian country where its introduction was prohibited by treaty or federal statute. The sole evidence used against him consisted of liquor which was found on his premises as the result of a search by J. A. Thompson, an Indian police officer, under a search warrant which admittedly was illegal and void. The search warrant described the premises to be searched as a four or five room house and outbuildings, Block 37, lots 7, 8 and 9, original townsite of Fairfax. The premises searched were Lots 23 and 24, Block 5, Tall Chief Addition to the City of Fairfax. Appellant filed a timely motion to suppress the alleged illegal evidence and to quash the indictment. The motion was overruled, a jury was waived, and a trial was had to the court. The only evidence introduced at the trial consisted of the liquor found as the result of the search by the Indian agent.

The government does not attempt to sustain the legality of the search warrant under which the search of appellant's premises was made. Its position is that J. A. Thompson, the Indian agent, was not a United States officer nor was he acting for or on behalf of the United States in making the search of appellant's premises.

The facts are simple and not in dispute. J. A. Thompson was an Indian police officer. He was appointed by the Superintendent of the Osage Indian Agency at Pawhuska, Oklahoma, with the advice and consent of the Commissioner of Indian Affairs of the Department of the Interior at Washington, D. C. He took an oath

of office to maintain and defend the constitution and the laws of the United States of America. Under his contract of employment it was his duty to enforce the liquor laws among the Osage Indians, maintain the peace, recover stolen property, and generally file criminal prosecutions before the Justice of the Peace or other state courts having jurisdiction of the infraction of the law. In other words, his authority under his contract was not limited to the suppression of liquor traffic, "but includes police work of general nature." He was paid from restricted funds in the hands of the Superintendent of the Indian Agency, belonging to restricted Indians who desired his employment and who had signed a subscription authorizing the agency to withdraw from their individual accounts the sum necessary for his salary.

■ The government contends that Thompson was not appointed an Indian police officer under the provisions of 25 U.S.C.A. § 13. It is pointed out that this section provides for the administration of funds appropriated by Congress and sets out the purposes for which such funds shall be administered, and that these purposes include appointment of Indian police. It is argued that since Thompson was paid from restricted funds belonging to individual Indians and did not receive his salary from funds appropriated by Congress, he was not appointed under the provisions of this statute. With this we cannot agree. The Secretary of the Interior and the Bureau of Indian Affairs have the same supervision over the expenditure of restricted funds belonging to individual restricted Indians as they have over the funds appropriated by Congress by this Act for the use and benefit of such Indians. The Secretary of the Interior could have authorized the payment of Thompson's salary from funds appropriated by Congress. Instead, he authorized payment of his salary out of restricted funds. The only power of appointment of an Indian police is found in the statute. That the appointment was made under the statute is evidenced by the fact that Thompson took an oath to defend the constitution and enforce the laws of the United States. He was paid by an official check issued by the disbursing officer of the Osage Tribal Agency at Pawhuska, Oklahoma. It is our conclusion that Thompson's appointment as an Indian police was under the provision of 25 U.S.C.A. § 13.

■ Thompson acted in his capacity as an Indian police officer in procuring the search warrant and in searching appellant's premises. We find no support in the record for the contention that in addition to his duties as an Indian police officer Thompson also acted as a general peace officer under the state law and in matters not connected with law enforcement on the Indian reservation. His own testimony indicates that whatever police work he did, whether in the enforcement of the liquor laws, recovery of stolen property, or the maintenance of the peace generally, was done under and by virtue of his contract of employment as an Indian police officer. He testified that: "My authority *under my contract f employment*[1] is not limited to the suppression of liquor traffic but includes police work of general nature." There is no showing that he had an appointment as a peace officer from the State of Oklahoma which would authorize him to enforce the laws of Oklahoma generally. He did testify that from July, 1936, to April, 1943, he apprehended or assisted in apprehending sixteen liquor law violators, all of whom were prosecuted in the state courts. But the fact that they were prosecuted in the state courts does not indicate that their apprehension was not caused by his employment as a police officer. In any event, it is quite clear that in this particular transaction, he was acting in line of his duty as an Indian police officer.

It is argued by the government that he was not an officer of the federal government in any sense of the word; that he operated under a private contract of employment; and that the only reason that his contract was approved by the Superintendent of the Osage Indian Agency was to enable him to be paid from restricted funds. It would not have been necessary to administer an oath in which he swore to defend the constitution and uphold the laws of the United States if it were thought that he was acting under a private contract of employment. All that it would have been necessary to do under those circumstances was to approve the contract and pay his salary.

In United States v. Levine, 2 Cir., 129 F.2d 745, the defendant was an employee

---

[1] Emphasis supplied.

of the Market Administrator of the New York Metropolitan Milk Area. The Administrator was selected by the Secretary of Agriculture. The defendant employee was convicted as an officer of accepting a bribe. It was held that the Administrator was a government agency notwithstanding that the funds for administration of the order did not come from the Department of Agriculture but were taxed directly to the handlers in the area in proportion to the number of pounds of milk each handler received.

In Steele v. United States, 267 U.S. 505, 45 S.Ct. 417, 69 L.Ed. 761, the Supreme Court held that a prohibition agent was an officer under the Act and that a search made by him must conform to the constitutional requirement in order to make the evidence resulting therefrom competent.

It is our conclusion that Thompson was acting in the capacity of an Indian police officer by virtue of appointment under 25 U.S.C.A. § 13.

■ The Fourth Amendment insures all persons against unreasonable searches and seizures, and provides that no search warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. The Fifth Amendment provides that no person shall be compelled to be a witness against himself. The importance of the constitutional guaranties of personal liberty cannot be over-emphasized. It has been stated time and again that such rights are indispensable to the full enjoyment of personal security, personal liberty and private property. It has been repeatedly held that these constitutional guaranties must be liberally construed so as to prevent a stealthy encroachment or a gradual depreciation thereof. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647.

■ It may be conceded that Thompson was not a United States officer in the strict, narrow sense of the word. The office of Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, is charged with the management of all Indian affairs. The object of the creation of this office was to establish an administrative agency to effectuate the government policy with respect to Indians under guardianship. For years Congress has prohibited liquor traffic among the Indians. Enforcement of the liquor laws was one of the important duties placed with this department. To enforce the liquor laws and regulations, the Commissioner of Indian Affairs was authorized to appoint Indian police to aid in the enforcement of these laws. In the discharge of these duties, the Indian Commissioner and those agents and employees appointed by him are engaged in effectuating the policy of the government as determined by the Acts of Congress. United States v. Birdsall, 233 U.S. 223, 232, 34 S.Ct. 512, 58 L.Ed. 930. They are agents of the government. The government could not take the benefits of the result flowing from the search under this warrant by one engaged in effectuating a governmental policy, free from the defects inherent in it.

■ But even if it be conceded that Thompson was not an officer, employee or agent of the federal government, engaged in the discharge of federal functions when he made this search, the result must still be the same. In Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381, it was held that where the state and federal officers have an understanding that the latter may prosecute in the federal courts offenses which the former discovered in the course of their operations, and where the federal officers adopt and take over a prosecution originated by the state officers as a result of a search made by them, the same rule as to the admissibility of evidence obtained in the course of the search should be applied as if it were made by the federal officers themselves or under their direction. See also Sutherland v. United States, 4 Cir., 92 F.2d 305.

Thompson's uncontradicted evidence was that after he searched the premises and found the liquor, he called the Deputy United States Marshal, who filed the complaint before the United States Commissioner, and thereupon arrested said defendant and took him before the Commissioner, where he was bound over to the United States Grand Jury; that he did not file a complaint before the Commissioner because he was not allowed his expenses to and from Fairfax to Pawhuska, Oklahoma; that prior to gasoline rationing he took such persons as he arrested for violation of liquor laws before the United States Commissioner, filed complaint, and gave such evidence as was necessary at said hearing.

This certainly evidences an understanding that the federal government was to take over the prosecution of the defendant, based upon this search and seizure, and carry it forward. This is far different from a situation where the government institutes an independent prosecution and incidentally uses evidence which was obtained in violation of the guaranties of the federal constitution by one not connected with the government. It would indeed be strange if the federal government could agree to take over the prosecution of a criminal offense, based upon a search made by one not connected with the government, and not be subject to the constitutional guaranties as to how such search must be made.

Reversed and remanded.