[5] The Latin phrase coram nobis means "before us," referring to the sovereign. Black's Law Dictionary (10th ed. 2014). The writ's name stems from the fact that at common-law, coram nobis was a writ of error taken from a judgment of the King's Bench. Id. In contrast, the writ coram vobis ("before you"), was a writ of error taken from any court other than the King's Bench, such as the Court of Common Pleas. Id.
[6] As the Supreme Court has explained, "the authority [of a federal court] to grant a writ of coram nobis is conferred by the All Writs Act, which permits 'courts established by Act of Congress' to issue 'all writs necessary or appropriate in aid of their respective jurisdictions.' " Denedo , 556 U.S. at 911, 129 S.Ct. 2213 (2009) (quoting 28 U.S.C. § 1651(a) ).
[7] As the Fourth Circuit has explained, "there is no there is no firm limitation of time within which a writ of coram nobis will lie." United States v. Rocky Mountain Corp. , 442 F. App'x 875, 876 (4th Cir. 2011).
[8] See United States v. Jefferson , 674 F.3d 332, 357 (4th Cir. 2012) (stating, in 2012, that the Supreme Court's interpretation of "official act" in United States v. Birdsall , 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914), "has never been overruled or called into question by the Supreme Court").
[9] The fact that Jefferson was a member of House caucuses that promote trade in West Africa did not alter this conclusion because "promoting trade is too general to be a matter pending before a public official, just as 'promoting business in Virginia' was too general in McDonnell . " Jefferson , 289 F.Supp.3d at 738 (citing McDonnell , 136 S.Ct. at 2359 ).
[10] The government also argues that the fact that defendant paid Jefferson such a large amount of money and iGate stock demonstrates that defendant must have been paying Jefferson in exchange for official acts and not merely in exchange for persuasion, influence, and promotion of iGate's business. Although this argument has some force, the evidence at trial revealed that Jefferson's non-official actions on behalf of iGate were very lucrative for defendant and resulted in significant business gains for iGate. Thus, the fact that defendant paid Jefferson a large amount of money in return for his services, without more, does not establish that defendant made those payments in exchange for "official acts."
[11] The government argues that as a result of defendant's failure to raise his Rule 11 and Fifth Amendment claims during his plea proceeding, defendant has "procedurally defaulted." Thus, the government asserts, defendant is required to demonstrate "cause" and "actual prejudice" or "actual innocence" in order to raise these claims now in support of his coram nobis petition. This argument fails because the Fourth Circuit has never required a coram nobis petitioner to satisfy every requirement for habeas corpus relief. Bereano , 706 F.3d at 576 n. 10 (noting that prior Fourth Circuit decisions concerning the availability of coram nobis did not "utilize[ ] habeas corpus procedures in resolving coram nobis petitions"). To the contrary, the Fourth Circuit has consistently required a coram nobis petitioner to satisfy only the four Akinsade elements. Indeed, as courts have sensibly concluded, there are at least two reasons that it is inappropriate to apply habeas procedural principles to coram nobis petitions: "(i) the gates to coram nobis relief are already protected by significant hurdles, such as the requirement that the error be a fundamental one, and (ii) few federal prisoners will desire to wait until their sentence of imprisonment is complete to launch a judicial attack on their conviction." United States v. Mora-Gomez , 875 F.Supp. 1208, 1216 n.10 (E.D. Va. 1995) (citing United States v. Darnell , 716 F.2d 479, 481 n.5 (7th Cir. 1983) ).
In any event, if necessary, defendant would be able to demonstrate cause and prejudice because (i) the legal basis of his claim was not reasonably available to defendant at the time of his direct appeal and (ii) defendant would not have pled guilty but for the errors. See Strickler v. Greene , 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ; Reed v. Ross , 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).
[12] This conclusion is not undermined by the fact that the legal basis for determining that defendant's guilty plea was infirm, i.e. the McDonnell decision, did not exist until after defendant's proceeding before this Court had concluded. This point is illustrated by the Fourth Circuit's analysis in United States v. Stewart , 256 F.3d 231, 251 (4th Cir. 2001). There, a defendant argued, for the first time on appeal, that his conviction and sentence were invalid under Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was decided during the pendency of his appeal. Stewart , 256 F.3d at 251. The Fourth Circuit concluded that because the defendant raised his Apprendi argument for the first time on appeal he was required to demonstrate plain error, despite the fact that the defendant did not have the benefit of Apprendi during his proceeding before the district court. Id. The Fourth Circuit's decision in United States v. Mandel , 862 F.2d 1067 (4th Cir. 1988) is also helpful in this regard. There, the petitioners for coram nobis argued that their mail fraud convictions should be vacated based on the Supreme Court's decision in McNally v. United States , 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held-in a decision issued five years after the completion of petitioners' sentences-that the mail fraud statute does not protect against schemes to defraud persons of their intangible rights such as the right to honest government. Mandel, 862 F.2d at 1071 . Importantly, the Mandel petitioners had argued at multiple points during their trial and pretrial proceedings that the mail fraud statute does not punish the deprivation of intangible rights. Id. at 1069-70. Thus, the Fourth Circuit in Mandel determined that, on review of the petition for coram nobis , the petitioners needed to satisfy only harmless error review because the petitioners had raised the same objection to their convictions before the trial court as they were now raising in their coram nobis petition. Id. at 1073. Accordingly, these cases confirm that because defendant here did not raise his Rule 11 and Fifth Amendment objections during his underlying proceeding, he would be required to show plain error on direct appeal and thus must satisfy the plain error standard on review of his coram nobis petition.
[13] The McDonnell decision applies retroactively because it is a "new 'substantive' rule" that "narrow[s] the scope of a criminal statute by interpreting its terms," namely 18 U.S.C. § 203(a)'s definition of "official act." Jefferson , 289 F.Supp.3d at 731 (quoting Schriro v. Summerlin , 542 U.S. 348, 351, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) ).
[14] Nor does this Memorandum Opinion hold that defendant was factually innocent of crime altogether. The government chose to have defendant plead guilty only to bribery and conspiracy to commit bribery and did not seek a guilty plea on any other charge or basis. But nothing in this Memorandum Opinion should be read as deciding that other aspects of defendant's activity did not constitute criminal conduct. All that is before the Court is whether defendant is entitled to a writ of coram nobis with respect to his convictions under the bribery statute, and in light of the Supreme Court's narrow reading of "official act," it is necessary to conclude that he is.
--------