UNITED STATES of America ex rel. Blanche Hobbs McNEILL, Plaintiff,

v.

Mesrop A. TARUMIANZ, M. D., Defendant.

Civ. No. 1492.

United States District Court D. Delaware.

May 21, 1956.

Oliver V. Suddard (of Wise & Suddard), Wilmington, Del., and Joseph E. Finley, Washington, D. C., for plaintiff.

Frank O'Donnell and Richard J. Baker, Deputy Attys. Gen. of the State of Del., for defendant.

RODNEY, District Judge.

This matter has been before the Court on several occasions. The plaintiff is a resident of Maryland and the defendant

is the Superintendent of the Delaware State Hospital, an institution maintained by the State of Delaware for the care and cure of persons suffering from mental disorders. He is State Psychiatrist and Criminologist. The plaintiff on two several occasions in the past has been committed as an inmate to the Delaware State Hospital.

The general tenor of the complaint is that in 1949 the plaintiff came to Delaware and soon thereafter was visited by an emissary of the defendant. The defendant having heard of threats by the plaintiff and serious accusations being made and being of the opinion that the plaintiff was perhaps mentally ill, made it known by the emissary that unless threats and accusations were discontinued that as a prerequisite to her admission to Delaware, as a resident, she should be required to submit to a mental examination pursuant to Delaware law. The particular statute is now found as 16 Del.C. § 5142 concerning the Mental Hygiene Clinic established at the State Hospital. Section 5142(e) provides that:

"The clinic may, through the State Psychiatrist and Criminologist, apply for the commitment of any person to the Delaware State Hospital at Farnhurst under any laws of the State relating to such commitments."
Examination of a person is a preliminary step to a commitment.

The original complaint was an inartistic document, charging deprivation of civil rights, evidently drawn without the benefit of counsel. A motion for summary judgment on behalf of the defendant was refused because this Court felt that a question of fact might be involved. An amended complaint was substituted, (based specifically on 42 U.S.C.A. § 1983), and after some other proceedings, this motion to dismiss the complaint was filed. The defendant has presented grounds for dismissal that had not theretofore been presented.

It will be borne in mind that it is not suggested that the defendant, or anyone in the situation stated, has any personal power of commitment, but here involved is only the question of invoking and bringing into play the ordinary or permissible proceedings under the laws of the state.

It is not suggested that the Delaware law providing for an examination of persons suffering from a mental or nervous disease, and possibly leading to a subsequent commitment to the State Hospital, is an invalid or unconstitutional act. The Statute provides for an examination of the patient by two licensed and qualified physicians or, at the request on behalf of the patient, it provides a trial by a jury of six responsible persons.[1]

The gravamen of the complaint is that the defendant, State Psychiatrist and Superintendent of the State Hospital, with former knowledge of the plaintiff, suggested that if the plaintiff came to reside in Delaware that he would cause such examination to be instituted in the manner the law prescribes.

Two questions are thus presented. (1) Can there be a violation of the Civil Rights Act by a State official instituting an investigation and calling into play the ordinary processes of the State under a valid, constitutional and unimpeached law? (2) Has the State official, intimating or suggesting that he might call the statute into play, an immunity for his actions?

I am of the opinion that the complaint must be dismissed from a consideration of both questions.

The first Civil Rights provisions, in their origin, had to do with a discrimination by which a person, without proper cause, was denied some right or privilege granted to another. The comprehensive Civil Rights Acts, however, have a somewhat broader scope; the particular section relied upon by the plaintiff, 42 U.S. C.A. § 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be sub-

1. 16 Del.C. § 5124.

jected, any citizen of the United States * *. * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws * * * ".

 I am of the opinion that no person has a civil right or a vested right to be immune from an investigation and examination as to mental condition had pursuant to the due processes of a valid law which provides the methods by which such investigation shall be had. There also must be, I think, an actual denial of due process before a cause of action arises under 42 U.S.C.A. § 1983.[2]

I am, therefore, of the opinion that no violation of the Civil Rights Statute is shown by the complaint.

2. As to the immunity of the defendant.

Most or all of the cases involving the immunity of a given official for the consequences of his action have involved a specific action to which objection is made. Here it is a suggested course of future action that is complained of.

A discussion of official immunity might include immunity with reference to tort actions in general, such as malicious prosecution or false imprisonment as well as that particular immunity for a violation of the Civil Rights Act under which alone the jurisdiction of this Court is invoked. To some degree the questions coalesce.

 The immunity of an official with reference to ordinary liability for a tort concerning an official action is of common law origin. At its inception it seems to have applied to judicial action. From this it has long been extended to much larger classification including quasi judicial officers, legislators and a large group of administrative officers.[3] One test seems to be as to whether the official ac-

tion or non-action involves the exercise of discretion or is merely ministerial in nature. Where the action involves the exercise of discretion, immunity is generally accorded.

I shall not indulge in a long and specific discussion of individual cases. I shall be content to state the general principles which I believe applicable with a citation of the authorities sustaining these principles.

In Yaselli v. Goff, 2 Cir., 12 F.2d 396, 403, 56 A.L.R. 1239, affirmed per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, it is said:

"A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured."

A partial list of cases involving immunity of officials for their public and discretionary action will be found in the footnote.[4]

A number of the cases cited in the footnote[5] specifically held the immunity to exist regardless of the motive by which the action was taken.

At one time it was thought that the immunity of public offices did not exist in its full force under the Civil Rights Act.[6] In Tenney v. Brandhove, 341 U.S.

2. Jennings v. Nester, 7 Cir., 217 F.2d 153.

3. A comprehensive list of officers to whom immunity has been extended may be found in 22 University of Chicago Law Review 641.

4. Yaselli v. Goff, 2 Cir., 12 F.2d 396, 56 A.L.R. 1239, affirmed per curiam 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395; Papagianakis v. The Samos, 4 Cir., 186 F.

2d 257; Cooper v. O'Connor, 69 App. D.C. 100, 99 F.2d 135, 118 A.L.R. 1440; Gregoire v. Biddle, 2 Cir., 177 F.2d 579; Bradley v. Fisher, 13 Wall 335, 20 L. Ed. 646.

5. E. g. Yaselli v. Goff and Papagianakis v. The Samos.

6. Picking v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 240.

367, 71 S.Ct. 783, 95 L.Ed. 1019, the Supreme Court expressly recognized the continuing vitality of immunity of legislators (the specific matter there before the Court) under the Civil Rights Act. The Court of Appeals of the Third Circuit expressly refrained from determining whether the Picking case was overruled by the Tenney case.[7] A number of cases, however, have discussed the question of such immunity.[8]

I am of the opinion that the actions or statements of the defendant, State Psychiatrist and Superintendent of the State Hospital, that he would call into play the due processes of the law as to an examination of the plaintiff as a prerequisite to her residence in the State does not constitute an actionable wrong under the Civil Rights Act and that he is not liable to suit for such action.

The complaint must therefore be dismissed and an appropriate order may be submitted.

---

7. Ginsburg v. Stern, 3 Cir., 225 F.2d 245.

8. Morgan v. Sylvester, D.C., 125 F.Supp. 380; Francis v. Crafts, 1 Cir., 203 F.2d 809; Cawley v. Warren, 7 Cir., 216 F. 2d 74; Tate v. Arnold, 8 Cir., 223 F.2d 782; and see "Doctrine of Official Immunity under the Civil Rights Act", 68 Harvard Law Review 1229.