Florence O'CAMPO, Appellant,

v.

Edna HARDISTY, Paul H. Wright, R. V. Rushford, N. P. Hughes and N. Drakulich, Appellees.

No. 15535.

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1958.

Reuben G. Lenske, Lenske, Spiegel, Spiegel, Martindale & Bloom, Portland, Or., for appellant.

C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellees.

Before FEE and HAMLIN, Circuit Judges, and BOWEN, District Judge.

HAMLIN, Circuit Judge.

Florence O'Campo, appellant herein, filed an action for damages in the Circuit Court of the State of Oregon for the County of Multnomah against five persons, one of whom was a former employee of appellant and the other four were employees of the Internal Revenue Service. She alleged that the five defendants conspired to ruin and destroy plaintiff's reputation as a nursing home operator and to breach the contracts which plaintiff had with various patients or persons who had contracted with plaintiff for the care of wards or rela-

tives. The four government employees, served individually on June 20, 1956, joined in the removal of the case to the District Court of the United States for the District of Oregon (28 U.S.C. § 1442).[1] On July 6, 1956, these defendants filed a motion to make more definite and certain, and also filed a request for admission of facts by the plaintiff in accordance with Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A. They also filed upon the same day a notice requiring the plaintiff to answer certain specified interrogatories within fifteen days from the date of service thereof in accordance with Rule 33, Federal Rules of Civil Procedure. Plaintiff did not answer the request for admissions within the required time, or at all, and neither did she answer the interrogatories within the required time, or at all. Thereafter, the same four defendants on July 19, 1956, moved for summary judgment; and on August 31, 1956, the same four defendants filed a motion to dismiss because plaintiff had failed to answer the interrogatories within the time provided under Rule 33. A hearing was had upon these motions and after argument by both sides, summary judgment was granted by the Court and entered on November 12, 1956.

Thereafter, following a denial of a motion for rehearing, plaintiff filed a timely notice of appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

The main charge in plaintiff's complaint was contained in paragraphs 5 and 6 thereof, which are set out below.[2]

---

1. Title 28 United States Code,
   "§ 1442. Federal Officers Sued or Prosecuted
   "(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
   "(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act

of Congress for the apprehension or punishment of criminals or the collection of the revenue. * * *"

2. Paragraphs 5 and 6 of the complaint are as follows:
   "V
   "That with intent to carry out said conspiracy, Defendants wrongfully obtained and disclosed to one another the names and addresses of guardians and relatives of said patients to be told the Plaintiff was no longer capable of operating a nursing home and that said nursing home was closed and that said guardians

The request for admissions filed by the four defendants, which was never answered by plaintiff, set forth generally the history of the dealings of the plaintiff with the Internal Revenue Service for a failure to pay withholding taxes in 1951 and 1955. It set forth that these taxes were delinquent, that negotiations had been had with the plaintiff by the Internal Revenue Service since 1952, that during those years and up to June, 1956, the plaintiff had failed to pay her taxes and had failed to keep her promises to pay those taxes made to the Internal Revenue Service, and that she also failed to answer requests to appear at the Internal Revenue Office for further conferences. The request for admissions further contained a statement that on June 6, 1956, plaintiff was informed by one of the four defendants that a seizure of plaintiff's real property would be made on June 11, 1956.[3] It also set forth that on June 14, 1956, while the taxes remained unpaid, that a notice of seizure and sale was served by the Internal Revenue Service covering the plaintiff's real property upon Eighty-second Avenue in Portland where plaintiff operated a rest home on the premises and where a number of aged and bedridden patients were confined. It further set forth, however, that the premises were not padlocked by the Internal Revenue Agents. Finally, it set forth

that on June 15, 1956, at 4:45 p. m. plaintiff appeared at the Internal Revenue Office in Portland, Oregon, paid her delinquent taxes, and that thereafter certificates of release of federal tax liens were filed of record by the Internal Revenue Service.

The request for admissions also contained the following first two paragraphs:

"1. Before the commencement of said action at all the times hereinafter mentioned, petitioners were and now are employees of the Internal Revenue Service of the United States of America. * * *

"2. *At all the times* mentioned in said action, petitioners were acting solely under color of their respective offices and by authority of the Internal Revenue Laws of the United States and *all their acts in connection* with the matters charged in said complaint *were committed* by each of them *under color of their respective offices*." [Emphasis supplied.]

██ Under Rule 36 of the Federal Rules of Civil Procedure the plaintiff, by her failure to answer the request for admissions as required by the rule, admitted the truth of all the matters contained in the request for admissions.

and relatives must immediately remove from the said nursing home the patients therein who were under the jurisdiction of the said respective guardians and relatives, and that the Plaintiff would no longer operate said nursing home and that the same would be immediately closed.

"VI

"That in pursuance of said conspiracy, Defendants did cause eleven of Plaintiff's fifteen patients to be removed from said nursing home and did cause Plaintiff's reputation as a nursing home operator to be materially damaged."

3. Title 26 United States Code,
   "§ 6331. Levy and distraint
   "(a) Authority of Secretary or delegate.—If any person liable to pay any

tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * * (b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

We may assume that it was Appellee's intention to determine from Appellant's answer to its request for admissions what acts of the agents the Appellant considered oppressive or outside the scope of their authority. Appellant, by her failure to answer or otherwise deny this request for admissions, admitted the facts stated therein.

There was also before the Court in the pleadings the verified petition of Appellees for removal of the case from the state court to the United States District Court which, *inter alia*, contained the statements as follows:

"3d. On June 14, 1956, the aforementioned delinquent taxes remained unpaid and a notice of seizure and sale was served by the Internal Revenue Service, covering plaintiff's property at 10305 S.E. 82nd Avenue, Portland, Oregon. Plaintiff operated a rest home on said premises and because of the aged and bedridden patients confined there, the premises were not padlocked by the Internal Revenue Agents, but the Clackamas County, Oregon, Welfare Office, guardians and intimate relatives of the various patients, were notified of the federal government's seizure of the rest home and advised that arrangements should be considered for their future care in view of these circumstances."

No denial was ever filed by the plaintiff of the facts set forth in this petition, and no motion to remand the case was ever filed by the plaintiff.

Rule 56(c), Federal Rules of Civil Procedure, provides that a summary judgment shall be rendered "if the plead-ings, depositions, and admissions  *  * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ We hold that the unanswered request for admissions resulted in Appellant's admitting that at all times the Appellees were acting solely under color of their offices and by the authority of the Internal Revenue Laws. The unanswered verified petition lends even more weight to the soundness of the District Court's ruling. By failing to answer or otherwise deny the facts alleged in the petition, the Appellant admitted that the rest home was not padlocked,[4] and that the proper authorities were notified to assure that arrangements would be made for the care of the patients therein.[5]

■ It has been held that governmental officers are not generally liable for their discretionary acts done pursuant to their lawful authority. See Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, at page 139, 118 A.L.R. 1440, where the Court said:

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute (United States v. Birdsall, 233 U.S. 223, 230–231, 34 S.Ct. 512, 58 L.Ed. 930); or even that they should be specifically directed or requested by a superior officer. Mellon v. Brewer, 57 App.D.C. 126, 129, 18 F.2d 168, 171, 53 A.L.R. 1519, certiorari denied 275 U.S. 530, 48 S.Ct. 28, 72 L.Ed. 409. It is sufficient if they are done by an officer '*in relation*

---

4. It can not be determined clearly what plaintiff meant in paragraph V of the complaint where on one line there is a reference to the fact that the "nursing home was closed" and four lines later, that it "would be immediately closed."

5. Cf. De Busk v. Harvin, 5 Cir., 1954, 212 F.2d 143, where an unanswered verified petition for removal to the federal court was deemed to establish the fact that the officers of the Veterans Administration Regional Office were acting under color of their office. The immunity of these officers was held sufficient grounds to grant their motion for judgment on the pleadings. Cited and followed on this point in Hartline v. Clary, D.C.S.C.1956, 141 F.Supp. 151.

to matters committed by law to his control or supervision.' * * * (Standard Nut Margarine Co. [of Florida] v. Mellon, 63 App.D.C. 339, 341, 72 F.2d 557, 559, certiorari denied 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696); or that they have *more or less connection with* the general matters committed by law to his control or supervision.' "

It is, of course, much simpler to state the rule than to apply it. A delicate balancing of interests is apparent. Every application of the rule involves a determination of whether the desirable result of discouraging highhanded and oppressive official action is outweighed by the risk of inhibiting and hamstringing those who energetically and objectively pursue their governmental duties. In such a delicate area one should move slowly. This is not an area that lends itself to sweeping generalities. Every case must be decided on its own merits.

This immunity for discretionary governmental action developed in actions against judicial officers, Bradley v. Fisher, 1871, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. At an early date the rule was extended to protect legislative and administrative officers. Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780. A list indicating officers who have been held to be protected by this immunity appears in 22 U. of Chi.L.Rev. (1955) 641.

Governmental immunity and the attendant immunity of those in its service has always been subjected to close scrutiny in the courts. United States v. Lee, 1882, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. Despite this, the doctrine has been extended by some to a point where many think the delicate balance is in danger of being upset. Certainly the instant case need not, nor do we wish it to, depend on Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579. This last case is often cited for the proposition that even malice does not defeat the immunity.

■ We believe that governmental immunity is tested not by the high standing or rank of the officer—not on a "King can do no wrong" theory—but by the nature of the function exercised. If the officer acts beyond the scope of the authority conferred upon him, he is, and should be, liable for the injurious consequences. Such a case is Ampey v. Thornton, D.C.Minn.1946, 65 F.Supp. 216, where an F.B.I. agent, in the course of tracking down a fugitive from justice, called a neighbor of the fugitive a vile name.

■ As we have indicated above, in the instant case, from the facts as gleaned from the pleadings and admissions, everything done by the Appellees was done under color of their offices. That minor governmental officers are within the scope of the immunity is well established. Complaints were dismissed against, or summary judgment granted to, the following minor governmental officials on the basis of their immunity: State Psychiatrist and Superintendent of State Hospital, in United States ex rel. McNeill v. Tarumianz, D.C.Del.1956, 141 F.Supp. 739; Internal Revenue Agents, in Hartline v. Clary, D.C.S.C. 1956, 141 F.Supp. 151; Officers of Veterans Administration Regional Office, in De Busk v. Harvin, 5 Cir., 1954, 212 F.2d 143.

The admissions in this case clearly show that the actions of the Appellees were entirely proper and gave rise to no cause of action. The notice sent by the Appellees to the proper authorities that the rest home would be closed was clearly reasonably necessary for the proper performance of their duties, for the notice assured that those persons who could care for the patients of the rest home were notified of the expected inconvenience.

The summary judgment was properly entered.

The judgment is affirmed.

JAMES ALGER FEE, Circuit Judge, concurs in the result.