**SWITCHMUSIC.COM, INC.**

v.

**U.S. MUSIC CORPORATION, et al.**

**No. CV04–4588RGKPLAX.**

United States District Court, C.D. California.

Jan. 24, 2006.

Daniel M. Cislo, Sarah A. Brown, of Cislo & Thomas, LLP, Santa Monica, CA, for Plaintiff Switchmusic.com, Inc.

Ronald S. Bienstock, and Randall S.D. Jacobs, of Bienstock & Michael, P.C. and Harold C. Klaskin, of the Law Offices of Harold C. Klaskin, for Defendants U.S. Music Corporation and Washburn International Corporation.

**Proceedings: (IN CHAMBERS) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 71)**

KLAUSNER, District Judge.

## I. INTRODUCTION

Switchmusic.com, Inc. ("Plaintiff") filed suit against U.S. Music Corporation and Washburn International Corporation ("Defendants") seeking declaratory judgment for: (1) non-infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) no unfair competition under Cal. Bus. & Prof. Code § 17200; (3) no trademark dilution under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c); and (4) no trademark dilution under Cal. Bus. & Prof.Code § 14330 *et seq.* Defendants counterclaimed for: (1) common law trademark infringement; (2) unfair competition under Cal. Bus. & Prof.Code § 17200; (3) trademark dilution under 15 U.S.C. § 1125(c); and (4) false designation of origin and false representation under 15 U.S.C. § 1125(a).

Presently before the Court is Plaintiff's Motion for Summary Judgment. Plaintiff is seeking summary judgment for all four of Plaintiff's claims for declaratory relief and all four of Defendants' counterclaims. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's Motion.

## II. FACTUAL BACKGROUND

Plaintiff is a California corporation that manufactures and markets musical instruments and musical instrument accessories. Defendants are Illinois corporations and Defendant U.S. Music manufactures and distributes guitars, amplifiers, and accessories. Defendant Washburn is a manufacturer of acoustic and electrical guitars. Plaintiff markets and distributes guitars that are similar to, though less expensive than Defendants' guitars.

On May 26, 2004, Defendants sent a cease and desist letter to Plaintiff stating that Plaintiff's guitars, sold under Plaintiff's "Wild" and "Stein" brand name lines, infringed Defendants' rights in the body shape of their "Parker" line of guitars. Defendants' letter demanded that Plaintiff cease and desist all manufacturing, marketing, and distribution of the guitars at issue. Plaintiff responded by filing this lawsuit seeking declaratory relief.

On June 24, 2004, Plaintiff filed its Complaint for declaratory judgment, alleging that Plaintiff had not infringed any of Defendants' rights by reason of Plaintiff's sale of its allegedly infringing guitars.[1] Defendants were served with the Summons and Complaint on October 21, 2004, but failed to timely file an Answer after receiving a number of extensions from the Court. Default judgment was entered against Defendants on March 2, 2005, which the Court ultimately set aside on May 4, 2005. On July 8, 2005, Defendants filed their Answer and Counterclaim alleging four counterclaims.[2] On November 30, 2005, Plaintiff filed the current Motion for Summary Judgment with the Court.

## III. JUDICIAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper only

---

**1.** Counts I—IV of Plaintiff's Complaint are detailed in the Introduction to this Order.

**2.** Defendants' four counterclaims are listed in the Introduction to this Order.

where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R.Civ.P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 326, 106 S.Ct. 2548.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed.R.Civ.P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

## IV. *DISCUSSION*

In its Motion for Summary Judgment, Plaintiff is seeking summary judgment for its four causes of action for declaratory relief in addition to seeking summary judgment on Defendants' four counterclaims. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's Motion.

### A. *Plaintiff's First Set of Requests for Admission*

As a preliminary matter, the Court addresses Defendants' separate argument that Plaintiff's Motion should be denied because the Motion is largely based on Defendants' default admissions resulting from their failure to answer Plaintiff's First Set of Requests for Admission.[3]

Under Rule 36 of the Federal Rules of Civil Procedure, if a party does not timely respond to a request for admissions, the non-answering party has automatically admitted the truth of all matters contained in the request for admissions.[4] Fed.R.Civ.P. 36(a); *O'Campo v. Hardisty*, 262 F.2d 621, 623 (9th Cir.1958). No motion to "establish the admissions is needed because Rule 36 is self-executing." *Cook v. Allstate Ins. Co.*, 337 F.Supp.2d 1206, 1210 (C.D.Cal. 2004). The effect of Rule 36(a) is that any matter admitted pursuant to Rule 36 is " 'conclusively established unless the court on motion permits withdrawal or amendment of the admission.' " *Id.* (citing Fed. R.Civ.P. 36(b)). Furthermore, if a non-answering party does not move to withdraw or amend its admissions, then the admissions "cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible." *Id.*

Plaintiff served Defendants with the First Set of Requests for Admission on

---

3. Plaintiff's First Set of Requests for Admission consists of Requests 1–47.

4. Rule 36(a) states that matters are deemed admitted unless the party against whom the admissions are directed responds with written answers within 30 days of service of the request for admissions.

August 4, 2005. (Brown Decl., Exhs. E–F). Defendants' responses were therefore due on September 6, 2005 (the day following Labor Day), but Defendants failed to timely provide Plaintiff with their responses.[5] In fact, the record shows that Defendants never provided any responses to Plaintiff's First Set of Requests for Admission. Defendants argue that Plaintiff should not be allowed to use the default admissions because Defendants received them when Defendants' Answer and Counterclaims ("Answer") had been "lost" by the Court Clerk, and thus certain issues had not yet been joined in the action. (Opp. at 3).[6] The Court finds this argument unpersuasive. Defendants' Answer was filed on July 8, 2005, approximately a month before Defendants received Plaintiff's Requests for Admission. By their own admissions, Defendants were not even aware that the Answer was not docketed, and thus "lost" according to Defendants, until August 24, 2005, which was nearly three weeks after they were served with the Requests. Simply stated, the Answer was filed on July 8, 2005, Defendants were served with Plaintiff's Requests for Admission on August 4, 2005, but did not believe the Answer was "lost" until August 24, 2005. There is no evidence that Defendants had any reason to believe, before August 24, 2005, that their Answer was not filed. Thus, Defendants' claim that they did not respond to the Requests because they did not believe their Answer was filed at the time the Requests were received is untenable.

The Court finds that Plaintiff's use of the default admissions is proper for the additional reason that parties cannot "attack issues of fact established in admissions by resisting a motion for summary judgment." *Kasuboski*, 834 F.2d at 1350 (internal citations omitted). Courts have held that "affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions." *Id.; see also 999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir.1985) (finding that "evidence inconsistent with a Rule 36 admission is properly excluded"). Defendants submitted an affidavit, declaration, and other evidence which Defendants claim raise issues of material fact, thus precluding summary judgment for Plaintiff. (Opp. at 4). The Court will not allow the consequences of Defendants' non-compliance with the rules of procedure to now be circumvented by introducing evidence that is contradictory to their default admissions. *Kasuboski*, 834 F.2d at 1350. (holding that while failure to respond to admissions can deprive a party of the chance to contest the merits of the case, such a result is necessary to insure compliance with the rules of procedure and the orderly disposition of cases).

The admissions have been conclusively established since September 6, 2005. The motion cut-off date in this case was November 30, 2005, but Defendants did not take any action to withdraw or amend the admissions until the filing of their Opposition to Plaintiff's Motion for Summary Judgment. Defendants notified the Court

---

5. The 30 day time period for responding to requests for admission begins to run on the date on which the requests were delivered "to the agency designated to make delivery," and not on the date the answering party receives them. Fed.R.Civ.P. 5(b)(2)(D); *see also E.E.O.C. v. Jordan Graphics, Inc.*, 135 F.R.D. 126, 127–28 (W.D.N.C.1991).

6. The Court notes that Defendants' Answer was never lost by the Court Clerk. Defendants confusion over the filing of the Answer apparently stems from the tardy docketing of the Answer by the Court Clerk.

in their Opposition that Defendants anticipate submitting a motion for leave to withdraw "as soon as procedurally possible." (Opp. at 3, n. 3). Because the motion cut-off date was November 30, 2005, Defendants did not timely file a motion to withdraw or amend and cannot now file a motion after the cut-off date. Thus, the Court finds that all matters contained in Plaintiff's First Set of Requests for Admission are conclusively established under Rule 36 and may properly be relied upon by Plaintiff in its Motion for Summary Judgment. *O'Campo*, 262 F.2d at 624; *Kasuboski*, 834 F.2d at 1350.

### B. *Plaintiff's Claim for Non-Infringement of Defendants' Trade Dress*

In its Complaint for declaratory judgment, Plaintiff seeks a declaration that Plaintiff's guitar designs for its Wild and Stein line of guitars do not constitute infringement of Defendants' trade dress for their Parker line of guitars. For the reasons set forth below, the Court finds that Plaintiff's Wild and Stein line of guitars do not infringe Defendants' trade dress in their Parker line of guitars and therefore declaratory relief is appropriate for Plaintiff.

 Trade dress refers generally to the total image, design, and overall appearance of a product and "may include features such as size, shape, color or color combinations, texture, graphics or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763,

765 n. 1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).[7] To recover for infringement of trade dress under the Lanham Act, a plaintiff must demonstrate that its trade dress is (1) non-functional, (2) serves a source-identifying role because it is inherently distinctive or has acquired secondary meaning; and (3) a likelihood of confusion exists. *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir.1998).[8] With respect to the second element, if the trade dress claim involves the product's design rather than its packaging, the party asserting trade dress rights must establish that the trade dress has acquired secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

### 1. *Defendants' Trade Dress is Functional*

 Trade dress protection extends only to design features that are nonfunctional. 15 U.S.C. § 1125(a)(3). A product feature "is functional and cannot serve as a trademark if [the product feature is] essential to the use or purpose of the article or if it affects the cost or quality of the articles, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). Trade dress cannot be both "functional and purely aesthetic." *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1382 n. 3 (9th Cir. 1987). The fact that individual elements of

---

**7.** The analysis for determining "whether a trade dress or an *unregistered* trademark is protected under Section 43(a) of the Lanham Act is essentially the same." *Two Pesos, Inc.*, 505 U.S. at 773, 112 S.Ct. 2753. (emphasis in original).

**8.** In trademark cases, courts have recognized that any role reversal occasioned by declaratory relief should not shift the burden of proof from the manner in which it would be assigned in a coercive infringement suit. 6A Moore's Federal Practice § 57.62[2][d]. In other words, the holder bears the burden of proving the validity of its trademark and that some product is infringing upon its product. *Id.*

trade dress may be functional does not necessarily mean the trade dress as a whole is functional. Rather, "functional elements that are separately unprotectable can be protected together as part of a trade dress." *Fuddruckers Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir.1987) (internal citation omitted). Thus, the trade dress must be examined "as a whole, not by its individual constituent parts." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir.2001).

■■■ Courts must consider several factors in determining whether trade dress is functional: "(1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantages of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n*, 158 F.3d at 1006. None of these factors is dispositive and all should be considered collectively. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir.1993). The burden of proof is placed on the party asserting the non-functionality of the trade dress. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1506 (9th Cir.1987).

In the present case, Defendants are holders of the trade dress at issue and must prove that the trade dress of the Parker line of guitars is non-functional. Defendants define their trade dress for the Parker guitars as: six (6) tuning machines aligned solely along the top side of the headstock; three (3) control knobs aligned in a straight line on the lower right side of the guitar body, and two (2) sets of humbucking pickups. (Brown Decl., Exh 4). Defendants also claim that the following elements are protected trade dress: a top left side arm that extends out from the guitar at a sharp angle; a bottom right side arm that protrudes from the guitar body; a top left side cutaway that is placed higher than the bottom right side cutaway; and the oblong shape of the bottom of the guitar. (Brown Decl., Exh 4).

### a. Utilitarian Advantage of Design

■■■ Because Defendants bear the burden of proof on the issue of nonfunctionality, the Court must determine whether Defendants have presented sufficient evidence to overcome summary judgment. Defendants argue that they expressly objected to Plaintiff's Second Requests for Admission in which Plaintiff's asked Defendants to admit the Defendants' trade dress was functional and utilitarian in nature. Additionally, Defendants argue that advertising materials they submitted demonstrate that the Parker line of guitars does not tout any utilitarian advantages of Defendants' trade dress.

The Court finds neither of Defendants' arguments persuasive. Though Defendants objected to Plaintiff's request that Defendants admit their trade dress is functional and utilitarian, Defendants did admit that their trade dress affects the quality, cost, and operation of the Parker guitars. (Brown Decl., Exh. E, p. 9). The Supreme Court has held that if trade dress affects the quality and cost of the product, such trade dress is functional and cannot serve as a trademark. *Qualitex Co.*, 514 U.S. at 165, 115 S.Ct. 1300. Moreover, Defendants admitted that their trade dress is not an arbitrary embellishment. (Brown Decl., Exh. E, p. 12). Thus, it is clear that the tuning machines, control knobs, humbucking pickups, arms, cutaways, and shape that comprise Defendants' trade dress are utilitarian in nature.

### b. Availability of Alternative Designs

The Ninth Circuit has stated that the availability of alternative designs "by itself

is insufficient to prove nonfunctionality; there must be a sufficient number of alternative designs such that providing trademark protection to one design would not hinder competition." *Disc Golf Ass'n, Inc.*, 158 F.3d at 1008 (summarizing McCarthy § 7:75 at 7–156).

As evidence of the availability of alternative designs, Defendants submitted a catalog containing images of numerous guitars by various manufacturers. (Bienstock Aff., Exh. H). Defendants claim that a visual review of this catalog demonstrates the wide variety of guitar body shapes and styles available in the marketplace. (Bienstock Aff., Exh H). Even when the Court views the record in the light most favorable to Defendants, there is insufficient evidence to support Defendants' claim. On the contrary, the catalog shows that there are a limited number of shapes and styles available for guitars. If Defendants were granted protection for their trade dress, it would have the undesired effect of severely hindering competition by reserving a particular design for Defendants' exclusive use.

### c. *Advertising of Defendants' Product*

The Ninth Circuit has held that if a seller "advertises the utilitarian advantages of a particular feature this constitutes strong evidence of functionality." *Disc Golf Ass'n, Inc.*, 158 F.3d at 1009. Defendants have admitted that their trade dress has been advertised as giving the user an operational advantage that is not found in other guitars. (Brown Decl., Exh. E, p. 10). Furthermore, with respect to the two humbucking pickups, Defendants submitted a product guide in which the advertising of their humbucking pickups clearly touts how the design of the pickups positively affects the sound created by the guitar. (Bienstock Aff., Exh. F).

### d. *Method of Manufacture*

This factor looks to whether the trade dress design results from a "comparatively simple or inexpensive method of manufacture" or whether the design "achieves economies in manufacture or use." *Disc Golf Ass'n, Inc.*, 158 F.3d at 1009. The record before the Court shows no indication that the trade dress design of Defendants' Parker guitars results from an expensive method of manufacture. Defendants submitted a page from a product guide that details which types of wood are used to manufacture Defendants' Parker guitars. However, nowhere does this page indicate that such materials or the construction process is an expensive method of manufacturing. (Bienstock Aff., Exh. F).

Taking all of these factors into consideration, it appears that the exclusive use of Defendants' trade dress would place competitors at a significant, non-reputation related disadvantage. Indeed, the issue here is whether, taken as a whole, the overall design of Defendants' Parker guitars is functional or primarily aesthetic. Defendants have not presented sufficient evidence of the arbitrariness and non-functional nature of its design and the availability of alternative designs to warrant a finding that its trade dress is not merely functional. Therefore, based upon the record, the Court finds that Defendants' trade dress is functional.

### 2. *Defendants' Trade Dress Does Not Have Secondary Meaning*

In order to establish a claim for trade dress infringement of a product design, the trade dress holder must show that its design has acquired secondary meaning. *Wal–Mart Stores, Inc.*, 529 U.S. at 216, 120 S.Ct. 1339; *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir.1985) (holding that

plaintiff bears the burden of showing its design obtained secondary meaning before the defendant commenced its allegedly infringing activities). Secondary meaning exists when, "in the minds of the public, the primary significance of a [design] is to identify the source of the product rather than the product itself." *Id.* at 211, 120 S.Ct. 1339 (internal citation omitted).

■ Trade dress holders may establish secondary meaning through direct and circumstantial evidence. *Cont'l Lab. Prod., Inc. v. Medax Int'l, Inc.,* 114 F.Supp.2d 992, 999 (S.D.Cal.2000). Direct evidence such as consumer surveys and consumer testimony provide the strongest evidence of secondary meaning. *Id.* (quoting *Levi Strauss & Co.,* 778 F.2d at 1358). Secondary meaning may also be established through circumstantial evidence such as "exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Id.* (quoting *Filipino Yellow Pages v. Asian Journal Publ'n,* 198 F.3d 1143, 1151 (9th Cir.1999)).

■ Upon review of the record, the Court finds insufficient evidence showing that Defendants have attained secondary meaning in their trade dress. Defendants failed to provide sufficient direct or circumstantial evidence of secondary meaning.[9] As evidence of secondary meaning, Defendants provided a number of reviews of Parker guitars in which the authors commented on the Parker guitar's design and features. (Bienstock Aff., Exhs. M–N). However, these reviews fail to show that Defendants acquired secondary meaning in their trade dress. They are merely

reviews concerning the attributes of Parker guitars.

Moreover, Defendants submitted printouts from an internet auction website which contains pictures for sale of famous musicians holding Parker guitars. (Bienstock Aff., Exh. O). Defendants claim this is evidence showing the notoriety and distinctiveness of the Parker trade dress. The Court disagrees with Defendants. These advertisements are merely pictures of musicians holding Parker guitars. Defendants fail to explain how these pictures prove that Defendants have attained secondary meaning in their trade dress. The Court therefore concludes that the record does not contain sufficient evidence supporting Defendants' claim that their trade dress has achieved secondary meaning.

### 3. Likelihood of Confusion

■ The test for likelihood of confusion is whether a "reasonably prudent consumer" in the marketplace is likely to be confused as to the origin of the goods or services bearing one of the marks. *Dreamwerks Prod. Group, Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998). The Ninth Circuit enumerated eight factors to consider when evaluating likelihood of confusion: (1) strength and distinctiveness of the trade dress; (2) similarity of the goods; (3) similarity of the trade dress; (4) evidence of actual confusion: (5) channels of marketing used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378, 1383–84 n. 6 (9th Cir.1987); *AMF Inc. v. Sleekcraft Boats,*

---

**9.** It is noted that Defendants failed to provide any of the forms of direct or circumstantial evidence listed in the *Cont'l Lab. Prod., Inc.* or *Filipino Yellow Pages* cases. While these forms of evidence are not mandatory, the complete absence of such evidence is noteworthy.

599 F.2d 341, 348–49 (9th Cir.1979). Applying these eight factors to the present case, the Court finds there is no likelihood of confusion.

### a. Strength of the Mark

 A strong mark is inherently distinctive and therefore should be afforded the widest scope of protection from infringing uses. *Sleekcraft Boats,* 599 F.2d at 349. Marks are classified in one of five categories increasing in distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Kendall–Jackson Winery. Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir. 1998). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive." *Two Pesos, Inc.,* 505 U.S. at 768, 112 S.Ct. 2753. Thus, marks that are suggestive, arbitrary or fanciful meet the distinctiveness element automatically. *Kendall–Jackson,* 150 F.3d at 1046. On the other hand, generic marks "can never meet the distinctiveness element." *Id.*

In the present case, it is difficult to qualify the distinctiveness of Defendants' Parker line of guitars. Although not generic, the Parker guitars do not squarely fit into any of the other classifications. Thus, this factor merits little weight in the Court's analysis.[10]

### b. Similarity of the Goods

 The Ninth Circuit has explained that "[t]he use of similar marks to offer similar products weighs heavily in favor of likelihood of confusion." *Brookfield Communications, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1056 (9th Cir.1999). When goods are related, "the danger present is that the public will mistakenly as-

sume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft,* 599 F.2d at 350. Moreover, where "convergent marketing channels," exist the likelihood of confusion increases. *Id.* at 353. Similarity of trade channels, however, does not require sales of both parties' goods by identical vendors, but only by "the same type of distribution channels." *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.,* 905 F.Supp. 1403, 1413 (E.D.Cal.1994).

Because Plaintiff and Defendants both market guitars and compete for the same retail customers, this factor weighs in favor of Defendants.

### c. Similarity of the Trade Dress

 The degree of the similarity of the marks is always considered a critical question in the likelihood of confusion analysis. *GoTo.com, Inc. v. The Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir.2000). Marks must be considered in their entirety as they appear in the marketplace. *Id.; Dreamwerks,* 142 F.3d at 1131. Put plainly, "the combination of features as a whole rather than a difference in some of the details ... must determine whether the competing product is likely to cause confusion in the minds of the public." *Perfect Fit Indus., Inc. v. Acme Quilting Co.,* 618 F.2d 950, 954 (2d Cir.1980). However, in making this assessment, similarities shall be weighed more heavily than differences. *See GoTo.Com,* 202 F.3d at 1206.

After thoroughly reviewing the record, the Court finds that this factor favors Plaintiff. A comparison of Defendants' Parker guitars and Plaintiff's Stein and Wild guitars shows very little similarity of trade dress. While the guitars have a slight similarity in shape, a comparison of the guitars reveals that Defendants' trade

---

**10.** The Court notes that neither party ad- dressed this factor in their briefs.

dress differs from Plaintiff's guitars. First, the bottom shape of Plaintiff's and Defendants' guitars are substantially different. Additionally, the shape of the right and left arms protruding from the body of Plaintiff's guitars are quite distinct from the arms on Defendants' Parker guitars. Moreover, the placement of the tuning machines and control knobs on Plaintiff's Stein and Wild guitars differs from their placement on Defendants Parker guitars. Finally, some of Plaintiff's guitars use single humbucking pickups, whereas Defendants' Parker guitars all contain dual humbucking pickups. In sum, the dissimilarity in appearance and overall impression between the parties' guitars outweighs any similarities. Accordingly, the Court concludes that this factor weighs in favor of Plaintiff.

### d. Evidence of Actual Confusion

Evidence of actual confusion is "persuasive proof that future confusion is likely." *Kendall–Jackson Winery, Ltd.,* 150 F.3d at 1048. To be sure, "convincing evidence of substantial actual confusion is ordinarily decisive." Restatement (Third) of Unfair Competition, § 23 cmt. b. (1995).

In the present matter, Defendants failed to produce sufficient evidence showing any instances of actual confusion between its Parker guitars and Plaintiff's Stein and Wild guitars. The guitar reviews. Defendants submitted as evidence fail to show any confusion between Defendants and Plaintiff's guitars. (Bienstock Aff., Exhs. M–N). Rather, the reviews merely describe the features of Defendants' Parker guitars. In addition, Defendants admitted that they have not received any communications from third parties regarding Plaintiff's products. (Brown Decl., Exh E, p 10). Thus, no third party has alerted Defendants of any incidents of actual confusion concerning Plaintiff's guitars. Ac-

cordingly, the Court finds that there is no evidence of actual confusion and this factor weighs in favor of Plaintiff.

### e. Channels of Marketing

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft Boats,* 599 F.2d at 353 (*citing* J.T. McCarthy, Trademarks and Unfair Competition § 24.6 (1973)).

Defendants argue that there is a likelihood of confusion because their Parker guitars and Plaintiff's Wild and Stein guitars are marketed through the same channels. In support of their argument, Defendants submitted pages from *Guitar World Buyers Guide* and also submitted show directories from the National Association of Music Merchants ("NAMM") trade shows. (Bienstock Aff., Exhs. H, K).

Plaintiff's and Defendants' guitars both appeared in *Guitar World Buyers Guide* and both parties were listed as exhibitors at the NAMM trade shows. However, numerous manufacturers' guitars are depicted in the *Guitar World Buyers Guide* and Plaintiff's and Defendants' guitars never appear on the same or neighboring pages. Additionally, the NAMM show directories merely indicate that both Plaintiff and Defendants were listed as exhibitors at the trade show. There is no evidence that Plaintiff and Defendants were located in proximity to one another at the trade shows in such a way as to cause confusion amongst buyers.

### f. Type of Goods and Degree of Care Likely to be Exercised

In determining whether there is a likelihood of confusion, courts look to "the reasonably prudent purchaser exercising ordinary caution." *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1393 (9th Cir.1993). Courts assume that buyers will exercise greater care in their purchases

when they are expensive. *Sleekcraft Boats,* 599 F.2d at 353.

The Court finds that this factor favors Plaintiff as Defendants have admitted that reasonable consumers are not likely to believe that Plaintiff's guitars were produced by Defendants. (Brown Decl., Exh. E, p. 12). Moreover, Defendants have admitted that reasonable consumers are not likely to believe that Defendants sponsored Plaintiff's guitars. (Brown Decl., Exh. E, p. 12). Finally, the record shows that Plaintiff's and Defendants' guitars are not inexpensive items and it is reasonable to assume that when customers are dealing with expensive products, they are more likely to exercise care, thus making confusion less likely. *See Brookfield Comm. Corp., v. West Coast Entm't Corp.,* 174 F.3d 1036, 1060 (9th Cir.1999) (finding that customers are likely to exercise less care when dealing with inexpensive products, thus making confusion more likely).

### g. *Plaintiff's Intent in Selecting the Mark*

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft Boats,* 599 F.2d at 353 (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58; *see Friend v. H.A. Friend & Co.,* 416 F.2d 526 (9th Cir.1969), *cert. denied,* 397 U.S. 914,. 90 S.Ct. 916, 25 L.Ed.2d 94 (1970)).

Upon reviewing the record and facts surrounding this case, the Court finds no

evidence that Plaintiff knowingly adopted or copied Defendants' trade dress. As such, this factor weighs in favor of Plaintiff.

### h. *Likelihood of Expansion of Product Lines*

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing". *Sleekcraft Boats,* 599 F.2d at 353 (citing Restatement of Torts § 731(b) & cmt. c). "When goods are closely related, any expansion is likely to result in direct competition." *Id.* (citing *Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245, 1253 (4th Cir.1970)).

The evidence shows that both parties' product lines are substantially similar. Moreover, there is no evidence showing that either party currently intends to expand their line of guitars.

### C. *Trademark Dilution under the Federal Trademark Dilution Act and Cal. Bus. & Prof.Code § 14330*

Plaintiff seeks declaratory judgment that it has not committed trademark dilution under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c), and Cal. Bus. & Prof.Code § 14330.[11] Plaintiff additionally seeks summary judgment on Defendants' claim for trademark dilution under the FTDA.

A party may be awarded relief under the FTDA if a plaintiff can establish

---

**11.** Analysis of trademark dilution under Cal. Bus. & Prof.Code § 14330 is substantially similar to analysis of the federal law. *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 874 (9th Cir.1999). Accordingly, the Court's finding as to the dilution claim under the FTDA applies equally to the state law claim. *See*

*Playboy Enter., Inc. v. Netscape Communications Corp.,* 354 F.3d 1020, 1031 (9th Cir. 2004) (refusing to address state law dilution claims because the analysis of such claims is substantially similar to the analysis under federal law).

that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; ... and [ (4) ] there is actual harm to the trademark holder." *Nissan Motor Co. v. Nissan Computer Corp.,* 378 F.3d 1002, 1010 (9th Cir.2004) (internal citations omitted). In addition, the "mark used by the alleged diluter must be identical, or nearly identical, to the protected mark." *Id.* In the Ninth Circuit, for marks to be nearly identical to one another, "they must be similar enough that a significant segment of the target group of customers sees the two marks as essentially the same." *Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 906 (9th Cir.2002) (internal citation and quotation marks omitted).

■ Plaintiff claims that, based on the evidence presented for the trademark infringement claim, Defendants have not proven that Plaintiff's trade dress is identical or nearly identical to Defendant's trade dress. The Court finds insufficient evidence to support summary judgment on the dilution claim for two separate reasons. First, the Ninth Circuit has determined that tests for dilution and likelihood of confusion for trademark infringement are directed at different actions and thus, courts cannot import "the relatively subjective similarity of the marks test from the likelihood of confusion context into the dilution context." *Thane Int'l, Inc.,* 305 F.3d at 906. Thus, Plaintiff's reliance on the likelihood of confusion test utilized in the trademark infringement claim is misplaced.

Additionally, summary judgment is inappropriate because neither party addresses any of the four required elements for a dilution claim. Moreover, neither party presents any evidence that "a significant segment of the target group of customers sees the two marks as essentially the same" or as fundamentally different. Indeed, other than a conclusionary statement by Plaintiff, no evidence on the "identical, or nearly identical" standard has been produced by either party. The Court therefore denies Plaintiff's Motion for Summary Judgment on its claim for non-dilution under the FTDA and Cal. Bus. & Prof.Code § 14330 and for Defendants' claim for dilution under the FTDA.

### D. *Defendants' Counterclaim for Common Law Trademark Infringement*

■ To prevail on a claim for common law trademark infringement, the holder of the trademark must show a likelihood of confusion. *Rosco, Inc. v. Mirror Lite Co.,* 304 F.3d.1373, 1384 (Fed.Cir.2002); *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073, 1080 (9th Cir.2005). Within the Ninth Circuit, courts use the eight *Sleekcraft* factors to determine whether likelihood of confusion exists. *M2 Software, Inc.,* 421 F.3d at 1080.

The Court has already found that there is no likelihood of confusion between Defendants' Parker guitars and Plaintiff's Stein and Wild guitars under the *Sleekcraft* factors. (*See* Section B above). Thus, Plaintiff's Motion for Summary Judgment as to Defendants' counterclaim for common law trademark infringement is granted.

### E. *Defendants' Counterclaim for False Designation of Origin and False Representation*

■ Similar to claims for common law trademark infringement, the test for false designation of origin and false representation under the Lanham Act is whether there was "a likelihood of confusion." *M2 Software, Inc.,* 421 F.3d at 1080 (finding the test for false designation, common law and statutory unfair competition claims to

be a likelihood of confusion); *see also Clamp Manuf. Co, Inc. v. Enco Manuf. Co., Inc.,* 870 F.2d 512, 518 (9th Cir.1989) (finding false representation claims to fall under the same "likelihood of confusion" test as unfair competition claims).

The Court has already determined that there is no likelihood of confusion between Defendants' Parker guitars and Plaintiff's Wild and Stein guitars. (*See* Section B above). Therefore, the Court finds that Defendants' claims for false designation of origin and false representation fail as a matter of law and the Court grants Plaintiff's Motion as to these claims.

### F. *Unfair Competition Under Cal. Bus. & Prof.Code § 17200*

The Ninth Circuit has consistently held that state claims of unfair competition brought pursuant to Cal. Bus. & Prof.Code § 17200 are "substantially congruent" to claims brought under the Lanham Act. *Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994). In other words, the likelihood of confusion test also governs state law claims of unfair competition. *Mattel v. MCA Records, Inc.,* 296 F.3d 894, 902 n. 2 (9th Cir.2002).

The Court's analysis of Defendants' common law trademark infringement and false designation claims is therefore determinative regarding Defendants' Section 17200 counterclaim. Moreover, because it has been firmly established that there is no likelihood of confusion, the Court grants Plaintiff's Motion for Summary Judgment seeking a declaratory judgment that it did not violate Section 17200.

## V. *EVIDENTIARY OBJECTIONS*

To the extent the Court relied on the parties' evidence, objections to that evidence are overruled.

## VI. *CONCLUSION*

In light of the foregoing, the Court **grants in part and denies in part** Plaintiff's Motion for Summary Judgment. Specifically, it is ordered that:

(1) Plaintiff is **granted** summary judgment as to its claim for declaratory judgment for non-infringement of Defendants' trade dress under the Lanham Act;

(2) Plaintiff is **denied** summary judgment as to (1) its claim for declaratory judgment for no trademark dilution under the FTDA and (2) Defendants' counterclaim for trademark dilution under the FTDA;

(3) Plaintiff is **denied** summary judgment as to its claim for declaratory judgment for no trademark dilution under Cal. Bus. & Prof.Code § 14330;

(4) Plaintiff is **granted** summary judgment as to Defendants' counterclaim for common law trademark infringement;

(5) Plaintiff is **granted** summary judgment as to Defendants' counterclaim for false designation of origin and false representation; and

(6) Plaintiff is **granted** summary judgment as to (1) its claim for declaratory judgment for no unfair competition under Cal. Bus. & Prof.Code § 17200 and (2) Defendants' counterclaim for unfair competition under Cal. Bus. & Prof. Code § 17200.

**IT IS SO ORDERED.**